Marion S. BARRY, Jr., et al.,
Appellants,

v.

AMERICAN TELEPHONE &
TELEGRAPH COMPANY and AT & T
Communications of Washington, D.C.,
Inc., Appellees.

DISTRICT OF COLUMBIA, et
al., Appellants,

v.

U S SPRINT COMMUNICATIONS
COMPANY, et al., Appellees.

AMERICAN TELEPHONE &
TELEGRAPH COMPANY and AT & T
Communications of Washington, D.C.,
Inc., Cross–Appellants,

v.

Marion S. BARRY, Jr., et al.,
Cross–Appellees.

U S SPRINT COMMUNICATIONS
COMPANY, et al.,
Cross–Appellants,

v.

Marion S. BARRY, Jr., et al.,
Cross–Appellees.

Nos. 88–1482, 88–1483, 88–1535
and 88–1537.

District of Columbia Court of Appeals.

Argued March 29, 1989.
Decided July 18, 1989.*

* The decision in this case was released this date.

Edward E. Schwab, Asst. Corp. Counsel,
with whom Frederick D. Cooke, Jr., Corp.
Counsel, and Charles L. Reischel, Deputy
Corp. Counsel, Washington, D.C., were on
the brief, for appellants/cross-appellees.

Julia L. Sayles, Asst. Corp. Counsel, and
Pastel Vann, Asst. Corp. Counsel, Wash-
ington, D.C., entered appearances for ap-
pellants/cross-appellees.

John M. Wood, with whom Joseph A.
Reiser, Jr., was on the brief for appel-
lees/cross-appellants American Tel. & Tel.
Co. and AT & T Communications of Wash-
ington, D.C., Inc.

William Malone, with whom John F. No-
ble, Washington, D.C., was on the brief, for
appellees/cross-appellants U S Sprint Com-
munications Co. Ltd. Partnership, ITT Com-
munications Services, Inc., and Cable and
Wireless Communications, Inc.

Paul M. Tendler, Atlantic City, N.J., en-
tered an appearance for appellee/cross-ap-
pellant TMC Long Distance of Washington
Incorporated.

Mitchell F. Brecher, Washington, D.C., entered an appearance for appellee/cross-appellant Allnet Communications Services, Inc.

Andrew D. Lipman and Russell M. Blau, Washington, D.C., entered appearances for appellees/cross-appellants Mid Atlantic Telecom, Inc., Long Distance Service of Washington, Inc., and Contel Office Communications, Inc.

Craig T. Smith and Patrick E. McMahon, Kansas City, Mo., entered appearances as of counsel for appellee/cross-appellant U S Sprint Communications Company.

Sandra K. Kincaid entered an appearance as of counsel for appellee/cross-appellant ITT Communications & Information Services, Inc.

Before MACK, NEWMAN and BELSON, Associate Judges.

NEWMAN, Associate Judge:

The District of Columbia, *et al.* (the District) appeal a declaratory judgment entered by the Tax Division of the Superior Court that the Gross Receipts Tax Amendment Act of 1987 and its companion bill, the Gross Receipts Tax Amendment Emergency Act of 1987, which impose a retroactive and prospective tax on the sale of telecommunications services originating from or terminating on equipment located in the District of Columbia, are unconstitutional.[1] On cross-appeal, American Telephone & Telegraph Co. and U S Sprint Communications Company, *et al.* (collectively referred to as the Carriers) request that the decision below be affirmed insofar as it holds the Acts unconstitutional and reversed insofar as it rejects their claims that the Acts are unconstitutional on other grounds. Although the constitutional issues may be inviting, we are barred from reaching them under our so-called anti-injunction statute, which provides that "[n]o suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax." D.C.Code § 47–3307 (1987). Therefore we reverse and remand with instructions to vacate the trial court's declaration of unconstitutionality.

I.

This litigation indirectly springs from the divestiture of American Telephone and Telegraph Co. (AT & T) in January 1984. The new relationships which evolved among the telecommunications companies operating in the District of Columbia following the divestiture changed significantly the implications and application of the District's gross receipts tax scheme, including a substantial reduction in taxable revenues. The District's attempt to adjust to the post-divestment realities of the telecommunications business by amending the then existing tax laws gave rise to the instant suit.[2]

---

1. While these appeals were pending, the Council for the District of Columbia enacted new telephone tax legislation in response to the adverse ruling below and the Supreme Court decision in *Goldberg v. Sweet*, — U.S. —, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989), a case upholding the constitutionality of an Illinois excise tax on interstate telecommunications. 36 D.C.Reg. 1911–20 (1989); *see* Toll Telecommunications Service Tax Emergency Act of 1989, D.C. Act 8–2, 36 D.C.Reg. 1892–1903 (1989) (emergency legislation effective March 1, 1989, for a period of ninety-days); Toll Telecommunication Service Tax Temporary Act of 1989, Act 8–14, 36 D.C. Reg. 2375–2386 (1989) (temporary legislation that will take effect after completion of the thirty-day congressional review period and remain in effect for 225 days, during which time the Council will consider permanent legislation).

2. Prior to the divestiture, Chesapeake and Potomac Telephone Company (C & P), a wholly owned local subsidiary of AT & T, was the sole provider of both local and long-distance telephone service in the District of Columbia. C & P provided long distance service to its customers through a "payment-for-payment" arrangement with AT & T and other affiliated local telephone companies. Under this arrangement, C & P collected the long-distance charges from its customers and passed the revenues on to AT & T. In turn, C & P received a share of the total long-distance revenues collected by AT & T from all of its subsidiaries. The "division of revenues" which C & P received from AT & T was subject to the District of Columbia's gross receipts tax under D.C.Code § 47–2501 (1981 & Supp.1988), as payments derived from the sale of public utility services within the District of Columbia. *See Chesapeake & Potomac Tel. Co. v. District of Columbia*, 78 U.S. App.D.C. 53, 54, 137 F.2d 674, 674–75 (1943) (allowing taxation

Hoping to recapture the revenues lost by the changes attendant to the divestiture, on July 17, 1987, the Council of the District of Columbia enacted the Gross Receipts Tax Amendment Act of 1987 (Act).[3] 34 D.C. Reg. 5068–73 (1987). Pursuant to the Council's emergency powers, they also passed the Gross Receipts Tax Amendment Emergency Act of 1987, making the provisions of the Act effective as of July 17, 1987, for a period of ninety days, and expiring on October 1, 1987. 34 D.C.Reg. 5275–80 (1987). The Emergency Act made the tax retroactive to July 1, 1986, without any payment being due before October 30, 1987.[4]

The "permanent" Act became effective on October 1, 1987. The Act amended D.C. Code § 47–2501 (1981) to require telecommunications companies previously exempt from the gross receipts tax to pay a 6.7% tax on the

> monthly gross receipts from the sale of toll telecommunication services that originate from or terminate on telecommunication equipment located in the District and for which a toll charge or periodic charge is billed to an apparatus, telephone, or account in the District, to a customer location in the District, or to a person residing in the District, without regard to where the bill for the service is physically received.

D.C. Law 7–25, § 2, 34 D.C.Reg. 5068 (1987), codified at D.C.Code § 47–2501(b) (Supp.1988). The tax is self-executing, that is, every month the companies must file an affidavit with the Mayor setting forth the amount of monthly gross receipts on which payment of the tax is made. D.C.Code § 47–2501(b)(1)(A) (Supp.1988). The legislation also created exemptions from the District's personal property, sales and use taxes where the company is also subject to the gross receipts tax, as well as a credit against the gross receipts tax for personal property tax paid to the District during the period of retroactivity, July 1, 1986 through September 30, 1987. D.C.Code §§ 47–2501(b)(3)(B), (C), 47–2005(5) & 47–2206 (Supp.1988).

On October 7, 1987, U S Sprint Communications Company, *et al.*, filed an action in the civil division of Superior Court seeking a preliminary injunction, *pendente lite*, to enjoin the District from collecting all taxes

---

of C & P because it was receiving revenue for public utility services which it rendered for the public).

At the same time, C & P also had arrangements with unaffiliated long-distance telecommunications carriers (OCC's) for their use of C & P's network access services and local facilities. Under this arrangement, C & P played no part in servicing or billing the OCC's customers. In return for the use of network access services and local facilities, C & P received "access payments" from the OCC's. Unlike the division of revenues C & P received from AT & T, these access payments were exempt from the gross receipts tax because the charges were not derived from the sale of public utility services within the District of Columbia. *See Chesapeake & Potomac Tel. Co. v. District of Columbia*, 117 U.S.App.D.C. 21, 26, 325 F.2d 217, 222 (1963) ("when a public service company supplies services or facilities to another public utility company in the same field for the sole purpose of enabling the latter company to serve its customers more efficiently, such services are not 'public utility commodities or services,' within the meaning of our statute, and thus are not subject to the gross receipt tax.").

The divestiture ended the payment-for-payment arrangement between C & P and AT & T.

Accordingly, in January 1984, C & P began treating payments received from AT & T for the use of its network access services and local facilities as access payments, and excluded those payments from its gross receipts. This tax treatment was eventually upheld in *District of Columbia v. Chesapeake & Potomac Tel. Co.*, 516 A.2d 181, 184 (D.C.1986).

**3.** The District estimated that as of 1986, the exclusion of access charges mandated by this court's decision in *Chesapeake & Potomac Tel. Co., supra,* 516 A.2d 181, resulted in a revenue loss of approximately $23.6 million. Under the Act, the District expected to recoup about $20 million from the retroactive portion of the tax and approximately $18.5 million per year thereafter. *See* D.C. Council Committee on Finance and Revenue, Report on Bill 7–186, "Gross Receipts Tax Amendment Act of 1987," at 7–8 (1987).

**4.** The purpose of the emergency legislation was to allocate certain revenues to a prior fiscal year and to provide the Department of Revenue authority and substantial lead time to adopt rules governing collections of revenue under the Act. 34 D.C.Reg. 5275 (1987).

under the Act.[5] While this action was pending, payments on the prospective and retroactive portions of the tax became due on October 20, 1987 and November 1, 1987, respectively. On or about November 16, 1987, the Department of Revenue issued notices of deficiency assessments to U S Sprint, Allnet, Mid Atlantic, RealCom, Long Distance and Starnet, for failure to pay the tax.[6] The notices informed the companies that enforcement measures to collect the tax would be taken if payments were not received by November 25, 1987. Thereupon U S Sprint, *et al.*, filed an amended complaint and an amended motion for a preliminary injunction. With respect to the complaint, the parties withdrew the prayer for a permanent injunction and instead requested declaratory relief.

On November 24, 1987, American Telephone & Telegraph Company and AT & T Communications of Washington, D.C., filed a motion to stay that was almost identical to the motion for preliminary injunction filed by U S Sprint, *et al.* The following day, the two actions were consolidated and transferred to the Tax Division, where the court orally granted a temporary restraining order on the collection of taxes, but withheld a written order pending a hearing on the merits. After oral argument, on December 3, 1987, Judge Barnes granted the Carriers' motion for a preliminary injunction notwithstanding the anti-injunction statute. The court found that equitable relief was warranted in light of the circumstances attendant to the imposition, retro-

actively, of a new tax enacted as emergency legislation.

This court granted the District's request for an expedited interlocutory appeal on the grant of the preliminary injunction motion and in an Order dated October 6, 1988, we remanded the case after concluding that "the record does not provide a sufficient basis for us to determine the correctness of the trial court's decision." We therefore directed the trial court to make more detailed findings of fact and conclusions of law, or in the alternative, to rule on the merits.[7]

Meanwhile, hearings on the merits had been held and on November 11, 1988, the trial court granted a declaratory judgment. The court concluded that the Act's retroactive and prospective provisions violate the Due Process Clause because of the overly burdensome costs of compliance; that the Act violates the Commerce Clause because it imposes a tax that is unfairly apportioned and not fairly related to the services provided in the District, and that application of the Act's provisions results in double taxation. The District contends that the declaratory judgment should be reversed. The court also found that the Act's tax exemption/credit provisions do not violate the Commerce Clause by discriminating in favor of local business; that Congress' delegation of legislative power to tax is fully consistent with the Origination Clause, and that the Act does not "concern the functions or property of the United States" in violation of D.C.Code § 1–233(a)(3) (1987). On cross-appeal, the

---

**5.** U S Sprint Communications Company (U S Sprint), TMC Long Distance of Washington Incorporated (TMC) and Starnet International, Inc. (Starnet) were the original plaintiffs in Civil Action No. 8599–87. Allnet Communication Services, Inc. (Allnet), Cable and Wireless Communications, Inc. (Cable & Wireless), Mid Atlantic Telecommunications, Inc. (Mid Atlantic), Long Distance Service of Washington, Inc. (Long Distance) and RealCom Communications Corp. (RealCom) were permitted to intervene as party plaintiffs on November 10, 1987.

**6.** Apparently some of the Carriers filed the requisite affidavits, but none paid the tax prior to commencing this suit.

**7.** In our Order for Remand we asked, *inter alia:* What is the factual and legal basis for the trial court's conclusion that this case presents exceptional and extraordinary circumstances so as to warrant injunctive relief, notwithstanding D.C.Code § 47–3307 (1987)? *See District of Columbia v. Green,* 310 A.2d 848 (D.C. 1973); *see also Bob Jones University v. Simon,* 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974) (injunction may issue only "if it is clear that under no circumstances could the Government ultimately prevail") (citing *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962)).

Carriers urge reversal of these findings.[8]

## II.

The District argues that D.C.Code § 47–3307 (1987) deprives this court of subject matter jurisdiction because it bars any suit that is filed to enjoin the assessment or collection of a tax by the District of Columbia. Simply put, the District claims that the Carriers, like all other taxpayers, should be required to abide by the "pay first and litigate later" rule, that is, as a condition precedent to challenging the assessment in court, a party must pay the tax. D.C.Code § 47–3307 (1987); *see* D.C. Code § 47–3303; *see also National Trust for Historic Preservation v. District of Columbia,* 498 A.2d 574, 576 (D.C.1985) (section 47–3307 "precludes equitable relief when there is an adequate remedy at law and ensures that the requirements of D.C. Code § 47–3303, that taxes be paid before they are challenged, is not circumvented.").[9]

The Carriers do not dispute that they failed to fulfill the jurisdictional requirements of section 47–3307 prior to commencing this action in Superior Court. Rather, the Carriers argue that section 47–3307 does not bar the instant suit because they are seeking declaratory relief and the statute only prohibits suits for injunctive relief. Even if the statute is applicable, the Carriers claim that Judge Barnes was correct in finding that equitable relief is nevertheless warranted because of the exceptional and extraordinary circumstances presented by the case.

Our first task then, is to determine whether the anti-injunction statute applies to declaratory relief as well as injunctive relief. We hold that it does. The generally recognized purpose of an anti-injunctive statute is to prevent disruptions in the flow of tax dollars to the state treasury for government operations and the provision of essential public services.[10] Although it is true that the language of section 47–3307 refers only to suits to "enjoin" the collection of any tax, we reject the Carriers' narrow interpretation of that term to preclude only injunctive relief, for declaratory relief "may in every practical sense operate to suspend collection of the state taxes until the litigation is ended" in the very same manner that an injunction would. *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 299, 63 S.Ct. 1070, 1073–74, 87 L.Ed. 1407 (1943).

8. "Our review of the Tax Division's decisions is the same as in other civil cases that are tried without a jury. • As to conclusions of law, we will not overturn the trial court's holding unless it is erroneous." *Chesapeake & Potomac Tel. Co., supra,* 516 A.2d at 184 (citations omitted).

9. There is no dispute that the Carriers have an adequate remedy at law. Upon payment of the tax, the Carriers may obtain judicial review of the assessment:

Any person aggrieved by any assessment by the District of any [gross receipts tax] ... or penalties thereon, may within 6 months after the date of such assessment appeal from the assessment to the Superior Court of the District of Columbia: *Provided, that such person shall first pay such tax together with penalties and interest due thereon to the D.C. Treasurer.* D.C.Code § 47–3303 (1987) (emphasis added).

10. *See Allen v. Regents,* 304 U.S. 439, 456, 58 S.Ct. 980, 988, 82 L.Ed. 1448 (1938) (Reed, J., concurring) ("The prompt collection of revenue is essential to good government. Summary proceedings are a matter of right. The Government has been sedulous to maintain a system of corrective justice. Any departure from the principle of "pay first and litigate later" threatens an essential safeguard to the orderly functioning of government.") (footnotes omitted); *Bull v. United States,* 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) ("taxes are the life-blood of government, and their prompt and certain availability an imperious need."); *Dows v. City of Chicago,* 78 U.S. 65, 66 (11 Wall.) 108, 20 L.Ed. 65 (1871) ("It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public."); *see also Maricopa v. Chatwin,* 17 Ariz.App. 576, 583, 499 P.2d 190, 197 (1972); *Pacific Gas & Electric v. State Bd. of Equalization,* 611 P.2d 463, 467, 165 Cal.Rptr. 122, 126, 27 Cal.3d 277 (1980) (en banc); *District of Columbia v. Keyes,* 362 A.2d 729, 737 (D.C.1976), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977); *American Can Co. v. McCanless,* 183 Tenn. 491, 193 S.W.2d 86, 88 (1946).

Undoubtedly, declaratory relief may just as well involve a mere declaration of the parties' rights without hampering or restraining the collection of taxes.[11] *Id.* at 299. However, even where declaratory relief involves only a declaration that a tax regulation is invalid, the threat of a lawsuit to enforce that judgment effectively restrains the government's ability to assess and collect the tax in a manner that is just as coercive as an injunction, though less immediate.[12] In other words, for all practical purposes, the government is equally precluded from assessing and collecting the tax whether it is injunctive or declaratory relief that is granted. In this context then, we fail to see any distinction between the two types of anticipatory relief that warrants dissimilar treatment under section 47–3307.

Furthermore, a contrary construction of section 47–3307 would undermine the purpose of the statute by condoning prepayment interference with the collection of taxes in one context, declaratory relief, and condemning it in another, injunctive relief. We doubt that Congress intended such an arbitrary result. Finally, our interpretation comports with D.C.Code § 47–3303 (1987).[13]

In holding that section 47–3307 applies to declaratory relief, we adopt the position taken by the Supreme Court in *California v. Grace Brethren Church*, 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982), where the Court decided that the federal anti-injunction act prohibited both injunctive and declaratory relief,

> because there is little practical difference between injunctive and declaratory relief, we would be hard pressed to conclude

that Congress intended to prohibit taxpayers from seeking one form of anticipatory relief against state tax officials in federal court, while permitting them to seek another, thereby defeating the principal purpose of the Tax Injunction Act. *Id.* at 408, 102 S.Ct. at 2508. Although the principles of comity and federalism played a role in the Court's decision to withhold equitable relief, we do not agree with the Carriers' contention that our analogy to the federal statute is therefore inapt. The tenet disfavoring the issuance of federal injunctions against the collection of taxes by state government evolved from the more universal principle that courts of equity should refrain from interposing equitable relief in cases involving the collection of taxes absent clear proof that there is no adequate remedy at law. *State Railroad Tax Cases*, 92 U.S. 575, 576, 23 L.Ed. 663, 673–74 (1876); *Cheatham v. United States*, 92 U.S. 85, 86–89, 23 L.Ed. 561, 562–63 (1876); *Dows, supra*, 78 U.S. (11 Wall) at 111–12, 20 L.Ed. at 67. For all of the foregoing reasons, we hold that section 47–3307 applies with equal force to bar suits for injunctive and declaratory relief before payment of the challenged assessment.

### III.

█ In light of our determination that section 47–3307 applies to prepayment declaratory relief, the Carriers would urge us to find that declaratory relief is warranted nevertheless because of the "exceptional and extraordinary circumstances" surrounding this case, citing this court's decision in *District of Columbia v. Green*, 310 A.2d 848, 852 (D.C.1973) (quoting from *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed.

---

**11.** Clearly, however, that is not the situation here. Although the Carriers would have us look away, we cannot ignore the realities existing outside the fine legal parameters of this case: the Carriers benefited from the protections afforded by the preliminary injunction, *pendente lite*, granted in Judge Barnes' Order of December 3, 1987, which order, of course, was subsumed by the declaratory judgment order of November 11, 1987. *See General Motors Corp. v. Miller Buick, Inc.*, 56 Md.App. 374, 467 A.2d 1064, 1070 (1983); *Theis v. San Antonio*, 555

S.W.2d 931, 933–34 (Tex.Civ.App.1977); 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2947 (1973).

**12.** "A declaratory judgment is one which determines and declares the rights of the parties without being immediately coupled with a coercive degree." *McIntosh v. Washington*, 395 A.2d 744, 748 (D.C.1978) (citation omitted).

**13.** *See supra* note 9, at 1073. Section 47–3303 requires taxpayers to pay the assessment before they can challenge it in a suit for a refund.

422 (1932)).[14] Although the language in *Green* guided the decision below,[15] we hold that the proper standard for determining whether equitable relief may be obtained against the collection of any tax requires: 1) a finding that "under no circumstances could the Government ultimately prevail," and 2) that "equity jurisdiction otherwise exists," that is, proof of irreparable injury and inadequacy of the legal remedy. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 6–7, 82 S.Ct. 1125, 1128–29, 8 L.Ed.2d 292 (1962); *see, e.g., IRS v. Shapiro*, 424 U.S. 614, 627, 96 S.Ct. 1062, 1070–71, 47 L.Ed.2d 278 (1976); *Bob Jones University v. Simon*, 416 U.S. 725, 744–45, 94 S.Ct. 2038, 2049–50, 40 L.Ed.2d 496 (1974); *see also District of Columbia v. Keyes*, 362 A.2d 729, 737 & n. 19 (D.C.1976), *cert. denied*, 430 U.S. 968, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977). Because we find that the Carriers did not meet the first prong of the *Williams Packing* test, we reverse.

The appellants in *Green* challenged the constitutionality of a statute utilizing a "stairstep" approach to increase the overall assessment levels for single-family residential properties. *Supra*, 310 A.2d at 852. Because the "jurisdictional points [were] not pressed with vigor ...", each of the parties preferring a decision on the merits," the court "simply point[ed] out" that it accepted the trial court's finding of "exceptional and extraordinary" circumstances, and referred to a passage in *Standard Nut. See id.* The Carriers urge us now to rely on this language; we decline to do so. The holding in *Green* that the court had jurisdiction was based upon the compelling equities of that particular case. We do not deem the *Green* court's reference to *Standard Nut* to have enunciated a substantive test to be followed thereafter in determining jurisdiction over cases involving injunction against the collection of taxes.[16]

**14.** In *Standard Nut,* the Supreme Court expanded the exception under the federal anti-injunction statute to permit suits to enjoin the collection of the tax where:

> the complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist *special and extraordinary circumstances* sufficient to bring the case within some acknowledged head of equity jurisprudence....

*Supra*, 284 U.S. at 509, 52 S.Ct. at 263 (citations omitted) (emphasis added).

**15.** Judge Barnes first dealt with the jurisdictional issue in her Order of Dec. 3, 1987, granting the Carriers' motion for preliminary injunction. She ruled that:

> [the] facts, coupled with plaintiffs' showing of irreparable harm and injury, its likelihood of prevailing on merit, its strong argument regarding public policy and the lack of an adequate remedy at law demonstrate that the facts and circumstances herein are extraordinary and exceptional warranting equitable relief from this Court.

She addressed the issue again in her Order of January 27, 1988, on the District's motion to dismiss. Citing *Green, supra,* she found that: facts before the Court reveal a new and first-time legislation, initially passed as an emergency legislation (Act 7–54) requiring the imposition, retroactively to July 1, 1986, of a gross receipts tax at the rate of 6.7% on certain telecommunications companies engaged in the providing of interstate and foreign toll telephone service. The Act appears to be in response to the historic and significant structure changes in telecommunications resulting from the divestiture of AT & T ... and the tax consequences of these changes.

Judge Barnes denied the motion; apparently she deemed this novel and historic turn of events sufficiently exceptional and extraordinary to warrant equitable relief.

**16.** We note with profound regret that this case marks at least the third time the District of Columbia has briefed the issue of lack of jurisdiction under the anti-injunction statute on appeal, but then has subsequently requested a decision on the merits nonetheless. *See 1776 K Street Associates v. District of Columbia*, 446 A.2d 1114, 1114 n. 1 (D.C.1982) ("While requesting a decision on the merits, 'in the public interest' [the District] ha[s] appropriately noted that suits to enjoin the collection of taxes are prohibited...."); *Green, supra*, 310 A.2d at 852 (the "jurisdictional points are not pressed with vigor here, each of the parties preferring a decision on the merits."). At a minimum, this strategy can lead to inadequate briefing, for example, none of the briefs filed in *Green* made note of the fact that *Standard Nut* was overruled in *Williams Packing*. At worst, it requires this court to overlook an express statutory limitation on the exercise of its judicial powers, a request we do not take lightly. *See* the District's Brief at 22 ("The anti-injunction statute is jurisdictional; absent compliance with the prerequisites for suits, the statute completely deprives the courts of jurisdiction, except in extremely narrow circumstances," which the District argued were not present here.).

This court's subsequent decision in *District of Columbia v. Keyes,* concurred in by the author of *Green,* supports this view and is wholly consistent with our adoption of the *Williams Packing* standard. 362 A.2d at 737; *cf. 1776 K Street Associates, supra,* 446 A.2d at 1117 (Ferren, J., concurring in judgment) (citing *Keyes* on issue of whether equitable relief may be granted). *But see 1776 K Street Associates, supra,* 446 A.2d at 1114 n. 1 (citing *Green* for proposition that notwithstanding the anti-injunction statute, equitable relief is warranted in "exceptional and extraordinary circumstances"). In holding that the anti-injunction statute barred the suit because the appellant failed to pay the tax prior to bringing suit, the court determined that injunctive relief "may be granted only in the most *exceptional and stringent* circumstances," citing *Bob Jones University, supra,* 416 U.S. 725, 94 S.Ct. 2038, and *Williams Packing, supra,* 370 U.S. 1, 82 S.Ct. 1125. *Keyes, supra,* 362 A.2d at 737 n. 19 (emphasis added).

*Williams Packing* unequivocally gutted the "special and extraordinary circumstances" exception created in *Standard Nut* and replaced it with a far more stringent standard which requires the taxpayer to prove that the government has no chance of success on the merits in addition to some irreparable injury. *Supra,* 370 U.S. at 6–7, 82 S.Ct. at 1128–29; *see also Commissioner v. Shapiro,* 424 U.S. 614, 627, 96 S.Ct. 1062, 1070–71, 47 L.Ed.2d 278 (1976); *Commissioner v. "Americans United" Inc.,* 416 U.S. 752, 758, 94 S.Ct. 2053, 2057, 40 L.Ed.2d 518 (1974); *Bob Jones University, supra,* 416 U.S. at 744–45, 94 S.Ct. at 2049–50.[17]

## IV.

 The remaining issue then is whether the Carriers have met the standards of *Williams Packing.* Under the first prong of the *Williams Packing* two-part standard, the taxpayer must show "at the time of the suit" that the government "under the most liberal view of the law and the facts," cannot establish its claim. *Williams Packing, supra,* 370 U.S. at 7, 82 S.Ct. at 1129; *see Shapiro, supra,* 424 U.S. at 627, 96 S.Ct. at 1070–71. In other words we will not look to the outcome below in determining whether the Carriers have met their burden under the first prong.

It is clear beyond a doubt that the Carriers failed to show that under no circumstances could the District have ultimately prevailed.[18] Without deciding the merits, we think that the Carriers' claims of unconstitutionality are "sufficiently debatable to foreclose any notion" that under no circumstances could the District ultimately prevail. *Bob Jones University, supra,* 416 U.S. at 749, 94 S.Ct. at 2052.

## V.

The "pay and sue" rule is no empty shibboleth, and only in "extraordinary and stringent" circumstances should courts take exception to its dictates. We recognize that our decision gives section 47–3307 almost literal effect, and by so holding may impose substantial hardship on taxpayers here in the District notwithstanding available postenforcement judicial review. To hold otherwise, however, would cause harm far beyond the confines of this case; for if equity is permitted to restrain the collection of taxes as the parties sorted through their respective rights, the burden of meeting the financial short-fall would rest on the shoulders of innocent taxpayers in the form of additional taxes and/or inferior or reduced public services. We believe this is

---

**17.** As the Supreme Court noted in *Bob Jones University:*

*Standard Nut* was such a significant deviation from precedent ... Read literally, the Court's opinion effectively repealed the [federal Anti-Injunction] Act, since the Act was viewed as requiring nothing more than equity doctrine had demanded before the Act's passage. The incongruity of this position has not escaped notice. It undoubtedly led directly to the Court's re-examination of the requirements of the Act in *Williams Packing,* the second time the Court has undertaken to rehabilitate the Act following debilitating departures from its explicit language.

*Supra,* 416 U.S. at 744–45, 94 S.Ct. at 2049–50.

**18.** *See Goldberg v. Sweet,* —— U.S. ——, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989).

the result the statute is designed to prevent.

*Reversed.*