**DISTRICT OF COLUMBIA, Appellant,**

v.

**Jackolyn MAYHEW, et al., Appellees.**

**No. 89–1533.**

District of Columbia Court of Appeals.

Argued Nov. 13, 1991.
Decided Dec. 20, 1991.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corporation Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

John E. Drury, Neil I. Levy, and Margaret A. Beller, with whom Eric S. Schuster, Washington, D.C., was on the brief, for appellees.

Before TERRY, FARRELL and KING, Associate Judges.

FARRELL, Associate Judge:

The issues we decide in this appeal are (a) whether the trustees under a deed of trust were entitled to constitutionally adequate notice of a tax sale of real property subsequently deeded to the District of Columbia, and (b), if so, whether the District's efforts to notify them were sufficient. We answer the first question yes, the second question no, and therefore affirm the judgment of the trial court declaring the tax deed held by the District to be null and void.

## I.

### The Statutory Framework

 Any property in the District of Columbia may be sold at a tax foreclosure sale for non-payment of property taxes and assessments. Before a tax sale takes place, the District is required by statute to mail two notices of the tax delinquency to the "record owner," stating that the property involved will be sold at public auction if the taxes are not paid. D.C.Code § 47–1302 (1990); 9 DCMR §§ 314.1, 314.2, 314.3 (1984).[1] Also before the sale, the District must publish notification of the sale in two local newspapers in a manner prescribed by regulations.[2] To purchase the property at a tax sale, a person must bid at least the amount of the back taxes. If no one bids the amount due, the Collector of Taxes must bid the amount due and the property is deemed to have been "bid off" by operation of law to the District of Columbia. D.C.Code §§ 47–1303, –1304; 9 DCMR § 316.7 (1984).[3]

---

1. Because the tax sale at issue in this case took place in 1984, the 1984 version of the District of Columbia Municipal Regulations was in effect. The regulations have since been updated, but the current version is substantially the same.

2. The trial judge invalidated the tax sale at issue here partly because of perceived defects in the notice that appeared in one of the two newspapers. The District vigorously disputes the correctness of that ruling. In view of our holding on the due process issue, however, we have no occasion to decide that issue.

3. Although the property is deemed to be purchased by the District, it continues to accrue taxes and assessments. The District can continue to offer the property for sale at subsequent tax sales, and each time the minimum amount bid must be at least the accumulated back taxes plus newly accrued taxes. D.C.Code § 47–1304.

Once a successful bid is made and the purchase price paid, the purchaser is issued a certificate of sale. D.C.Code § 47–1304. This certificate does not operate to transfer title; before such a transfer takes place, a two year redemption period must run. Within two years from the date of sale, the record owner of the property "or any other person having an interest therein" may redeem the property by paying all of the accrued taxes, interest, and penalties. D.C.Code § 47–1306(a). Accordingly, the District must give the record owner notice of the imminent expiration of the redemption period by registered or certified mail "[n]ot less than thirty (30) days prior to the expiration date...." 9 DCMR § 317.3 (1984). If the period runs without any attempt at redemption, the tax sale purchaser may apply for a deed at any time within five years from the date of the tax sale. The tax deed once issued is "prima facie evidence of a good and perfect title in fee simple...." D.C.Code § 47–1304.

Property that is bid off by operation of law to the District can be disposed of in three ways. Under D.C.Code § 47–1304, if no one redeems the property during the two year period, the Mayor "shall in the name of and on behalf of the District of Columbia, sell said property at public or private sale and issue to any purchaser of such property a deed," which serves to transfer title as if the deed were issued pursuant to the annual tax sale provisions. No further notice is required if the property is disposed of in this manner. The District may also go to court to enforce a lien against the property under D.C.Code § 47–1312; the court may then, after notice to the record owner, decree a sale of the property to satisfy the lien. D.C.Code §§ 47–1313, –1314. Finally, the District may choose to place the property in the Homestead Program, D.C.Code § 45–2701 et seq. (1990), designed to let low income families purchase delinquent tax property at a reduced price. Thirty days before the property becomes part of the Homestead program, additional notice must be given to the record owner and any lienholders. D.C.Code § 45–2711; 10 DCMR § 3902.3(b) (1987).

## II.

## The Facts

The property at issue is located at 6425 14th Street, N.W. The record owner is ETDH Associates, whose current partners are the estate of B. Edith Gonska and Sandra Laake.[4] ETDH purchased the Fourteenth Street property in 1979. A deed of trust established at the time made Connecticut Avenue Woods No. 2, Inc. (Conn. Ave. Inc.) the beneficiary of the trust and Leon Gerber and Samuel Dweck the trustees. The deed of trust, recorded on July 20, 1979, bore the trustees' names but not their addresses. Conn. Ave. Inc. dissolved some time between October and December 1979, and the beneficial interest under the deed of trust was transferred to the United Jewish Appeal Federation (UJAF). The dissolution of Conn. Ave. Inc. and the transfer of the beneficial interest were not a matter of public record, as UJAF failed to record its interest. The trustees, however, remained the same.

ETDH failed to pay property taxes on the property. After giving notice of the delinquency, the District mailed notice to ETDH that the property would be sold at auction in the tax sale for 1984, to be held on January 16, 1985. The District also gave what purported to be proper notice by publication. See note 2, supra. The tax sale was held as scheduled, and when no one bid for the property, it was purchased by the District of Columbia as required.[5] On December 12, 1986, notice by mail was sent to ETDH that the two year redemption period would expire on January 16, 1987. However, no attempt was made to give notice to the trustees under the deed of trust. In November 1987, trustee Sam-

---

4. Sandra Laake owns 21% of ETDH, and the estate of Edith Gonska owns the rest. Appellee Jackolyn Mayhew is Edith Gonska's granddaughter, while appellee Clifford Bailey is the personal representative of the estate.

5. The District again attempted to sell the property at annual tax sales held in 1986, 1987, and 1988.

uel Dweck died. On April 11 and 20, 1988, the District sent written notice to ETDH *and* to trustees under a junior trust stating that the property had been placed in the Homestead Program and that the thirty day redemption period was about to expire.

At the end of April 1988, the District made its first and only attempt to contact Conn. Ave. Inc. and the named trustees Samuel Dweck and Leon Gerber. The District learned that Conn. Ave. Inc. had dissolved and the beneficial interest under the deed of trust had been transferred; but because UJAF had not recorded its interest, the District had no way of determining to whom the beneficial interest had gone or how to contact that party.[6] By contrast, the trustees' names and addresses were in the Washington, D.C. telephone book. The District's attempt to contact the trustees consisted of two telephone calls made by an administrator of the Homestead program. The first was to Samuel Dweck's law firm, which told the District that Dweck was no longer with the firm and that there was no forwarding address. The District later learned that Samuel Dweck was deceased. The District official did reach Leon Gerber by phone, and asked simply if he had any connection with property on 14th street; he answered no. As the trial court found, there was no evidence concerning what else, if anything, the official asked Gerber, "nor any evidence as to whether she asked him if he was a trustee." The District made no further attempt to notify Gerber by mail or otherwise. On June 3, 1988, the property was deeded to the District for inclusion in the Homestead Program.

 The appellees [7] contested the deed and intervened in the District's action to quiet title to the property. Besides claiming error in the published notice, note 2, *supra*, they asserted that the District had failed to provide constitutionally adequate notice to the trustees under the deed of trust.[8] On cross-motions for summary judgment, the trial court ruled in favor of appellees on both claims, declaring the tax deed void. The District now appeals.[9]

### III.

### Discussion

The trial judge ruled, as pertinent here, that the District's failure to notify the trustees of the tax sale by mail or personal service violated due process under the decision of the United States Supreme Court in *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). This was so, the judge reasoned, irrespective whether the proper time for notice was before the tax sale (when the property was bid off to the District), before the expiration of the two-year redemption period, or before the property was deeded to the District in June of 1988. At none of these points, the judge found, was the notice given reasonably calculated to apprise the trustees of the pendency of the tax sale and provide them an opportunity to present their objections. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

On appeal the District argues that the trustees (Gerber and Dweck) had no interest in the property entitled to due process protection, and that even if they did, the "substantial efforts" made to notify them of the sale met constitutional requirements. We consider these arguments in turn.

---

6. Appellees make no claim that UJAF, as an entity holding an unrecorded interest in the property, should have received notice in a manner other than by publication.

7. In addition to the parties listed in note 4, *supra,* the appellees are UJAF and Leon Gerber.

8. In their motion for summary judgment, appellees also claimed that the published notice contained an error in the computation of taxes due. The trial judge did not address this issue, and we also do not reach it in view of our disposition.

9. Still outstanding before the trial court is appellee Mayhew's allegation of wrongful eviction by the District as a result of the allegedly invalid tax sale. Nevertheless, the grant of summary judgment against the District in its suit to quiet title is properly before this court as an interlocutory order "changing or affecting the possession of property," within the meaning of D.C.Code § 11–721(a)(2)(C) (1989). *See Hagner Management Corp. v. Lawson,* 534 A.2d 343, 345 (D.C.1987).

## A.

"To have a property interest in a benefit, a person ... must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support certain claims of entitlement to those benefits." *Id.; Parratt v. Taylor*, 451 U.S. 527, 529 n. 1, 101 S.Ct. 1908, 1910 n. 1, 68 L.Ed.2d 420 (1981).

We have no difficulty in concluding that, in the District of Columbia, a trustee under a deed of trust has the requisite property interest deserving of due process protection. By statute, a trustee under a deed of trust is deemed to have a "qualified fee simple," D.C.Code § 45–703 (1990), an estate which may pass to his or her heirs. *Id.* This is the same estate granted a mortgagee, *id.* Indeed, in this jurisdiction a deed of trust is the equivalent of a common law mortgage, in effect creating a three-party mortgage transaction. *Yasuna v. Miller*, 399 A.2d 68, 71–72 & n. 5 (D.C.1979); *accord, Johnson v. Martin*, 567 A.2d 1299, 1301 (D.C.1989); *Jefferson Fed. Sav. & Loan Ass'n v. Berks Title Ins. Co.*, 472 A.2d 893, 894 (D.C.1984); *W.A.H. Church, Inc. v. Holmes*, 60 App.D.C. 27, 29, 46 F.2d 608, 610 (1931).[10] While in comparison to the interest of the debtor or creditor, "the estate of the trustee is a naked legal title without any beneficial interest whatever," *Marshall v. Kraak*, 23 App.D.C. 129, 132 (1904), this does not mean the trustee has no property interest for due process purposes.[11] Aside from his own qualified fee simple, the trustee under a deed of trust owes fiduciary duties to

both the noteholder and the borrower. *Perry v. Virginia Mortgage & Inv. Co.*, 412 A.2d 1194, 1197 (D.C.1980); *Paroni v. Quick*, 211 A.2d 765, 768 (D.C.1965); *Holman v. Ryon*, 61 App.D.C. 10, 13, 56 F.2d 307, 310 (1932). In general these duties are only those "imposed by the trust instrument itself," *Perry*, 412 A.2d at 1197, but they are manifold, *e.g., Paroni*, 211 A.2d at 768 ("trustees ... cannot escape any obligation which, under the same conditions, would result upon a mortgagee"), and may expose the trustee to substantial liability for their breach. Moreover, they may include the duty, pertinent here, to provide material information to the beneficiary or mortgagee under some circumstances. *See* RESTATEMENT (SECOND) OF TRUSTS § 173 comment d (1959) (trustee is "under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person with respect to his interest"). Whatever the scope of this obligation, we think that, when considered with the entirety of the trustee's duties, it lends concrete substance to the property interest—the qualified fee simple—conferred upon the trustee by statute.

In *Mennonite, supra*, the Supreme Court held that a mortgagee under Indiana law "possesses a substantial property interest that is significantly affected by a tax sale." 462 U.S. at 798, 103 S.Ct. at 2711. *See also Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988) (unsecured claim in form of cause of action against estate for unpaid bill is property interest protected by due process clause). Because a trustee under a deed of trust in the District holds the same statutory property interest as a mortgagee, one that carries with it important fiduciary duties,

---

10. Hence in *Shenandoah Corp. v. Pringle*, 385 A.2d 748 (D.C.1978), a suit to quiet title brought by the tax sale purchaser following expiration of the two-year redemption period, the trustees under a deed of trust were named as party-defendants. *Id.* at 749 n. 3.

11. In *Marshall* the court held only that a trustee has no constitutional or fundamental right of property that would be impaired by legislative enactments preventing legal title from passing to trustees' heirs or allowing for their summary replacement.

we hold that a trustee is entitled to due process protection under the Fifth Amendment.[12]

### B.

 The remaining issues, therefore, are what process the trustees under the deed were due, and whether they received it. In *Mullane v. Central Hanover Bank & Trust Co.*, *supra*, and *Mennonite* the Supreme Court recognized that

> prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Mennonite*, 462 U.S. at 795, 103 S.Ct. at 2709 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657).[13] In *Mullane* and subsequent cases, the Court rejected the notion that constructive notice by publication is sufficient to inform interested parties, at least "those who could be noticed by more effective means such as personal service or mailed notice." *Mennonite*, 462 U.S. at

795, 103 S.Ct. at 2709. *Mennonite* held specifically that a mortgagee of real property whose name and address are reasonably identifiable must receive notice through the mail or by personal service before a tax sale is held. *Id.* at 798, 800, 103 S.Ct. at 2971, 2712. "[U]nless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*." *Id.* at 798, 103 S.Ct. at 2711. In light of our holding in part III.A., *supra*, we conclude that a trustee under a deed of trust in the District of Columbia must likewise receive notice by mail or personal service where the trustee's name and address are reasonably identifiable.

But when must that notice be given? The District argues that *Mennonite*'s requirement of notice *before* the tax sale takes place should not apply to tax sales conducted under District of Columbia law. It points out that, quite unlike in the District of Columbia, a purchaser at a tax sale under the Indiana law at issue in *Mennonite* acquired a certificate of sale that gave him a lien against the property purchased superior to all other liens against the property extant at the time the certificate was issued.[14] This distinction is a real one and

---

**12.** We note that this holding accords with an interpretation by the Office of the Corporation Counsel in 1983 of which parties are entitled to due process under *Mennonite*. The Office understood that class to include "mortgagees, lessees (having a leasehold interest), trustees, beneficiaries of *record*, and other parties or entities *of record* determined on an ad hoc basis." (Memorandum dated October 28, 1983, reproduced as an appendix to Brief for Appellant) (emphasis in original). It is also noteworthy that in this case the District gave written notice to trustees under a junior deed of trust.

The District relies on *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 164 U.S.App.D.C. 263, 505 F.2d 370 (1974), as implying that trustees under a deed of trust have no interest protectible by due process, because there the court rejected a claim that trustees had to satisfy themselves that defaulting *borrowers* had received actual notice of a foreclosure sale or that reasonable steps had been taken to provide personal notice. *S & G Inv.*, of course, involved no constitutional issue of whether a trustee is entitled to due process notice protections. Moreover, the lack of any duty on the part of trustees to notify borrowers rested chiefly, in the court's view, on the express statutory duty placed on the *noteholder* to notify the property owner:

"Congress would not have enacted a statute to require noteholders to give notice to owners if trustees were required to give notice." *Id.* at 269, 505 F.2d at 376.

**13.** The same requirements apply in the District of Columbia by virtue of the due process component of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

**14.** In *Mennonite* the Court, while noting that under Indiana law "[a] mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property," pointed out that "[t]he tax sale *immediately and drastically* diminishes the value of this security interest by granting the tax-sale purchaser a lien *with priority over that of all other creditors*." *Id.* at 798, 103 S.Ct. at 2711 (emphasis added). The District asserts, and appellees do not dispute, that under District of Columbia law a tax sale purchaser acquires no lien at the time of the sale, but only an expectation that at a future date a deed will be issued if there is no redemption. *See McCann v. Scaduto*, 71 N.Y.2d 164, 181, 524 N.Y.S.2d 398, 406, 519 N.E.2d 309, 317 (1987) (Simons, J., dissenting) (finding the

hence the District's argument has force. But we have no occasion in this case to consider whether, or under what circumstances, due process might require pre-sale notice in accordance with *Mullane* to a trustee or other interested party in a tax sale under District law. Indeed, it is not even necessary for us to consider appellees' argument that, at a minimum, due process requires notice by mail or its equivalent prior to the expiration of the two-year statutory redemption period. See page 40, *supra*.[15] We find it unnecessary to decide this issue because it is apparent from the record in this case that the District *never* gave constitutionally adequate notice to the trustees before conveying the property to itself for inclusion in the Homestead program.

 The District concedes that it did not give notice to the trustees by mail or personal service. It relies instead on the Supreme Court's suggestion in *Mennonite* that a governmental body is not "required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record." 462 U.S. at 798–99 n. 4, 103 S.Ct. at 2711–12 n. 4. Thus the issue boils down to whether the District made reasonable efforts to locate the trustees to give them the required notice. Appellees appear to concede that no further efforts were required to locate trustee Dweck, who had died in November 1987 and as to whom

a telephone call to his law firm yielded the answer that he was no longer with the firm and had left no forwarding address. But they contend there were no similar facts excusing the failure to give proper notice to trustee Gerber, whose name was in the public record. We agree. Although no address for Gerber was recorded, his name appeared on the deed and his address was "reasonably ascertainable." *Id.* at 800, 103 S.Ct. at 2712. Gerber's deposition stated, and the District did not dispute, that he was a physician who had resided in neighboring Montgomery County for the past twenty years; that he had had an office in the District of Columbia for the past forty-five years; and that both of his addresses were listed in the telephone books as early as 1984. The District claimed only that when it contacted Leon Gerber, M.D. by telephone, he stated that "he had no connection with any property on 14th Street."[16] We agree with the trial judge that this was not adequate inquiry excusing the failure to notify Gerber by mail or personal service at the listed addresses. Without further inquiry by telephone or otherwise, the District could not simply assume that the Leon Gerber it spoke with was not the individual named on the deed of trust. A single phone call which, as the judge noted, did not even call Gerber's attention to the fact he was listed as a trustee on the deed did not relieve the govern-

---

"most significant factor in the *Mennonite* case ... was the immediate subordination of the mortgagee's interest").

15. Though the District hedges somewhat in its brief as to whether notice is constitutionally required before the two-year redemption period expires, we take as its ultimate position the statement in its brief (reinforced at oral argument) that due process requires "the District to give notice to lien holders only ... *when a deed actually cutting off the lien holders' interest is to be issued*" (emphasis added). This may occur no *sooner* than expiration of the two-year redemption period, but it may occur as late as the five-year period from the date of the tax sale within which the tax sale purchaser may apply for a deed. D.C.Code § 47–1304. In this case the District, as purchaser of the property, issued the deed to itself in June of 1988, seventeen months after the expiration of the redemption period.

The District asserts that its normal practice is to give the required notice when it "is close to issuing a deed to the property in question," and that this notice is constitutionally sufficient. Hence it contends it was not required to give notice to the lienholders or trustees until June of 1988, when it assumed ownership of the property and had the option of selling it or placing it in the Homestead program. Appellees, in reply, urge rejection of this elastic deadline for notice in favor of requiring notice before expiration of the redemption period. They point to the Corporation Counsel's own memorandum, note 12, *supra*, which calls for mailed notice thirty days before expiration of that period as comporting with *Mennonite*.

16. It thus appears that no other Leon Gerber was listed in the local telephone books.

ment of its duty of notice under *Mennonite.* The trial judge did not err, therefore, in ruling as a matter of law that the notice to Gerber was constitutionally deficient.[17]

Accordingly, the order of the Superior Court granting summary judgment to appellees, and thereby voiding the tax deed, is

*Affirmed.*

---

**17.** We pretermit entirely two additional issues. First, since no claim is made that the holder of the beneficial interest (UJAF) had actual notice of the tax sale, we do not pursue the hypothetical question whether a trustee could move to invalidate a tax sale on grounds of inadequate constitutional notice to him where the beneficiary in fact had notice of the sale.

Second, although we have assumed for the sake of argument that ETDH, the record owner, received proper statutory notice, no one—specifically the District—has argued that this should bar EDTH from reclaiming the property (on payment of the taxes and other monies owed the government) even if the tax deed is void as to the trustees and UJAF. "[W]e take the case as we find it," *Dupree v. Jefferson,* 215 U.S.App. D.C. 43, 47 n. 24, 666 F.2d 606, 610 n. 24 (1981), and thus decide no issue of the standing of an owner who has received proper notice to benefit from invalidation of a tax sale as to other parties.