Jerry D. MASSIE, et ux., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 91–CV–533.

District of Columbia Court of Appeals.

Argued Oct. 21, 1993.

Decided Dec. 20, 1993.

Jerry D. Massie, pro se. Colin C. Carriere filed a reply brief on behalf of appellants.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Before FERREN, STEADMAN, and SULLIVAN, Associate Judges.

STEADMAN, Associate Judge:

This appeal involves a title dispute between two parties, both of whom claim their property rights from tax sales of the residential property at issue. The Massies, appellants, purchased at the tax sale later in time. They contend that, at the latest, when they turned in the tax certificate after the redemption period expired, they extinguished any claim by the District to the property arising from the bid off of the property in the name of the District at prior tax sales. We agree. Accordingly, we reverse the trial court's order entering summary judgment in favor of the District of Columbia, and order the entry of summary judgment in favor of the Massies.

**A.**

The property at issue was residential property. It had been auctioned each year from 1982 to 1988 for unpaid real property taxes. As required by law, the property was bid off in the name of the District each year between 1982 and 1987 when no bids were received on the property.[1] On January 27, 1988, the Massies successfully bid for the property at an auction held following the nonpayment by the owner of a nuisance assessment against the property. The Massies paid the full amount of their bid within five days as required by D.C.Code § 47–1304 and received a tax certificate.

Prior thereto, the District in August 1987 had begun to consider the property for inclusion in the recently-enacted Homestead Housing Preservation Program (the Homestead Program), D.C.Code § 45–2701 to –2711 (1990).[2] "Around September 1987" the District requested title reports for 125 properties bid off to the District at the 1984 tax sale. In April 1988, the District received a title report on the property in connection with the Homestead Program. On July 28, 1988, the day after the six-month redemption period for the nuisance assessment expired, the Massies turned in their tax certificate for a deed in accordance with section 47–1304.[3] No such deed was issued. Instead, in September 1988, record owners Lionel and Pamela Foreman and lienholders Stephen Troese, and Franklin Investment Co., Inc. were given a thirty-day notice, pursuant to D.C.Code § 45–2711, –2704(c)(2) (1990) and 14 D.C.M.R. 2902.3(b) (1991), of the District's intent to include the property in the Homestead Program.[4] The property was not redeemed and a deed was issued to the District for the Homestead Program on December

---

1. "In case no other person bids the amount due, together with penalties and costs, on any lot, the said Collector of Taxes shall bid the amount due, together with penalties and costs, on the same and purchase it for the District." D.C.Code § 47–1303(a) (1993 Supp.). This provision was section 47–1303 prior to June 1990, when subsection (b) was added, allowing the District to bid on property for the Homestead Program at delinquency sales held to satisfy unpaid water and sewer charges, whether or not other bids are entered. D.C.Code § 47–1303(b) (1993 Supp.).

 The law requires that property purchased by the District at tax sale "shall not be exempted from assessment and taxation, but shall be assessed and taxed as other property." D.C.Code § 47–1304 (1990). As a result, it must be resold every year if the taxes are not paid.

2. Under the Homestead Program, properties are sold by the District for a minimal price to persons who agree to reside in the property for five years, pay property taxes as they come due, and bring the property into compliance with the building code.

3. The Massies bought the property under D.C.Code § 47–1205(b) (1990), which provides a redemption period of six months instead of the normal two years. D.C.Code § 47–1205(c) (1990).

4. Appellants were not given that notice. We need not address their argument that as "other interested parties," they were entitled to such notice under the statute and regulations.

23, 1988, based on its bid off of the property at the January 1984 tax sale.

Thereafter, the District brought an action to quiet title in which the Massies intervened. The trial court denied the Massies' motion for summary judgment and granted the District's cross motion for summary judgment against the Massies, giving the District title to the property under a first-in-time principle.

### B.

 The Massies are correct that the District does not have a superior right to the tax deed merely because it purchased the property at the earlier 1984 tax sale. As held in *Gray Properties, Inc. v. Tobriner*, 123 U.S.App.D.C. 150, 357 F.2d 829 (D.C.Cir. 1966), the second purchaser at a tax sale may obtain priority over a previous tax sale purchaser.[5] Therefore, to fully protect its right to obtain a tax deed, the prior tax sale purchaser must "make certain that the property [is] not again the subject of a tax sale" by paying the taxes as they come due. *Gray Properties*, 123 U.S.App.D.C. at 151, 357 F.2d at 830. Because the District must resell the property each year, see note 1, *supra*, it cannot protect its interests as a private tax sale purchaser could. However, the District's statute does protect the revenue interests of the District by providing that "no deed shall be issued [to the tax sale purchaser] until all taxes and assessments appearing upon the tax books against the property are paid, with penalties, interests, and costs, *including taxes for the years for which the District purchased the property at tax sale.*" D.C.Code § 47–1304 (emphasis added).[6]

This provision indicates that a later tax sale purchaser would generally prevail over a prior bid off of the property to the District, as long as the District was paid for those prior taxes as well. This is in accord with the general rule that a municipality to which property is bid off at a tax sale acquires no greater rights than a private purchaser at such a sale. 72 Am.Jur.2d *State and Local Taxation* § 957 (1974); Annotation, *Respective Rights and Estates of Persons Claiming Real Property Through Sales from Different Agencies to Enforce Taxes or Assessments, as Between Which There is Parity of Lien,* 167 A.L.R. 1001, 1004 (1947).

 The District argues, however, that the provision which allows the District to take title for itself to property bid off in the name of the District for unpaid taxes gives the District priority here. If property which has been bid off in the name of the District of Columbia has not been redeemed within two years,

> the Mayor of the District may enforce the lien of the District for taxes or other assessments on such real property by ordering that a deed in fee simple to such property be issued by the Mayor of the District of Columbia to the District of Columbia, and up to the time of the issuance of the deed such property may be redeemed by the owner or other person having an interest therein....

D.C.Code § 47–847 (1990).[7] The District argues that it should prevail because "bureaucratic delay" prevented it from receiving title before December 1988, although it did everything it could to get the deed for the District

---

5. This is in accord with the general rule nationwide. See 72 Am.Jur.2d *State and Local Taxation* § 965 (1974) ("while the first purchaser acquires a new and paramount title, the second purchaser acquires also a paramount title superior to that of the first"); *see, e.g., North Bergen Township v. Usher*, 142 N.J.Eq. 479, 60 A.2d 809, 811 (1948) ("The rule is well established that municipal [tax] liens take precedence in the inverse order of the time when they become liens."); *Little River Drainage Dist. v. Sheppard*, 320 Mo. 341, 7 S.W.2d 1013, 1013–14 (1928) (en banc) ("The general rule is that the priority of general tax liens is in the reverse order of their accrual. That is, the latest tax lien is paramount to a prior tax lien.").

6. Appellants' ability and willingness to comply with this requirement was not at issue in the trial court proceedings.

7. Apart from D.C.Code § 47–847, the District's sole available course of action in dealing with its bid-off property was to resell the property. If the property were not redeemed within two years after being bid off in the name of the District, the District "shall ... sell said property at public or private sale," with the resulting deed having the same effect as if the property had been purchased at the original sale. D.C.Code § 47–1304.

by *requesting the deed* from the Department of Finance and Revenue in September, 1987.[8] However, the affidavit on which the District relies says that the manager-administrator for the Homestead Program *requested a title report* for this property around September 1987. A request for a title report is not the equivalent of "ordering that a deed in fee simple be issued," much less issuing the deed itself, which is the critical event under the statute.

This conclusion is fortified by the express provision in the statute that the owner "or other interested party" has the right to redeem from the District at any time until a deed actually is issued. D.C.Code § 47–847. According to the legislative history of the Homestead Program, "the impact of this provision [section 47–847] is that a property owner is not finally divested of title to property bid off in the name of the District until a deed to the District issues, notwithstanding that the two year redemption period has already passed." Council of the District of Columbia, Report on Bill No. 6–168, D.C.Law 6–135 (1986). Title does not automatically vest in the District once the property has been bid off to the District but instead the Mayor must order the issuance of a deed. *Id.* Thus, the structure of the provision itself evidences that the ordering of and issuance of the deed to the District is the step that is intended to vest the District's rights vis-a-vis other claimants. Here, that did not occur until some five months after the Massies turned in their tax certificate for a deed. Property rights and their relative priority are best served by clear evidentiary rules

and not some imprecise indications of possible interest.

■ When the Massies surrendered their tax certificate before the District issued itself the deed, they were entitled to a deed pursuant to the statute applicable to private purchasers. D.C.Code § 47–1304. If a bid is received from a purchaser other than the District,

> upon payment of the purchase money, the said Collector of Taxes shall issue to the purchaser a certificate of sale, and if the property shall not be redeemed by the owner or owners thereof within 2 years from the last day of sale, by payment to the Collector of Taxes ... a deed *shall* be given by the Mayor of the District, or his successors in office, to the purchaser at such tax sale, ....

D.C.Code § 47–1304 (emphasis added). Although a tax certificate does not operate to transfer title because the redemption period must run before such a transfer occurs, *District of Columbia v. Mayhew*, 601 A.2d 37, 40 (D.C.1991), the Massies were entitled to receive a deed upon the expiration of their redemption period, which occurred before the District's title had vested,[9] and upon their making application for a deed.[10] The Massies had fulfilled all the legal requirements to receive a tax deed and, undisputed by the District, had done everything in their power to get the deed. The District here seeks to obtain title to property where absent its own delay in issuing the Massies' deed, the District would have no sound basis for a superior claim on the property.[11] This it cannot do.

---

**8.** We note that appellee did not begin official proceedings to notify owners and lienholders of its intent to include property in the Homestead Program until September 1988, one year after the District now claims it had a right to the property and two months after appellants requested a deed. See note 4, *supra*.

**9.** This result is not foreclosed by *Robinson v. District of Columbia*, 372 A.2d 1005 (D.C.1977). Robinson did not appeal any judgment involving his priority as a tax certificate holder against the property owner who had belatedly redeemed the property and who was the rival title claimant. Here, the title dispute is directly between appellants on the one hand and the District on the other. The District cannot fairly assert that ap-

pellants can have no legal remedy if the District asserts title to property flowing from a tax sale in the face of superior title rights in appellants. We are not faced here with a situation where, after a deed is issued to the District, it reconveys that property to a third person.

**10.** If the person bidding at the tax sale does not make application within five years from the date of the sale, the purchase payment is forfeited and the owner "or any other person having an interest therein at the time of redemption" may redeem the property. D.C.Code § 47–1304.

**11.** We need not explore here questions of relative priority on other factual scenarios; e.g., if a deed had been issued to the District before the Massies

The summary judgment in favor of the District is vacated and the case remanded with instructions to enter judgment for the Massies.

*So ordered.*

**In re L.H. and L.H.**

surrendered their tax certificate, or if the District could not have earlier exercised its right to acquire the property because of the differing redemption periods.