**FAWNCREST ASSOCIATES, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 98–CV–380.**

District of Columbia Court of Appeals.

Argued March 22, 1999.

Decided April 15, 1999.

Torin K. Andrews, Gaithersburg, MD, for appellant.

Edward E. Schwab, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before FARRELL and REID, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

At a January 1992 tax sale, appellant ("Fawncrest") purchased a property in Southeast Washington, D.C. ("the property") and received a tax certificate. During the two-year redemption period, *see* D.C.Code § 47–1304(a) (1990),[1] the record owner of the property conveyed it to a bank (the successor to the mortgagee), and the bank—still during the redemption period—sold it to the District of Columbia. Fawncrest requested a tax deed at the end of the two-year period, *see id.*, but was turned away, the District instead refunding with interest the money Fawncrest had paid for the certificate. Fawncrest sued in Superior Court, contending that since no legal error vitiated the tax sale, the District could not undo it by subsequently buying the property, and that even if it could, it was required—but had failed—to "redeem" the property in accordance with the statutory procedure. The trial court granted summary judgment for the District. We affirm.

■ The statutory process for sale of tax-delinquent property has been summarized in our past decisions, *e.g., McCulloch v. District of Columbia,* 685 A.2d 399, 401 (D.C. 1996); *District of Columbia v. Mayhew,* 601 A.2d 37, 39–40 (D.C.1991), and we presume familiarity with it here. Fawncrest does not dispute that at the tax sale it acquired only "an inchoate interest in the property that [would] not ripen into title for two years following the tax sale." *McCulloch,* 685 A.2d at 401; *see* D.C.Code § 47–1304(a) (*deed* issued at expiration of redemption period "shall be admitted and held to be prima facie evidence of a good and perfect title in fee simple" to the property). Naturally, therefore, Fawncrest does not dispute the original record owner's right to sell the property during that period, in this case to the bank. Instead, it disputes the government's right to purchase the property and so defeat the interest (however inchoate) of a prior tax sale

---

1. The tax sale statute was amended by D.C. Law 11–52, § 109, 42 D .C. Reg. 3684, effective September 26, 1995, so as to (among other things) reduce the period of redemption following a tax sale to six months rather than two years. As the relevant events in this case all took place before the statutory change, the amendments are inapplicable.

purchaser. According to Fawncrest, the statutory scheme limits the District's right to buy tax-delinquent properties to the "bid off" procedure of D.C.Code §§ 47–1303, –1304(a), under which the District retains its lien on (or "bid[s] off") a property at the tax sale if no one else makes a bid sufficient to meet the outstanding taxes, penalties and costs.

This argument is unavailing. Nothing in the statute implies that the bid-off procedure, itself giving the District "no greater rights than a private purchaser at . . . a[tax] sale," *Massie v. District of Columbia,* 634 A.2d 1226, 1228 (D.C.1993),[2] is the exclusive way by which the District may acquire property subject to a tax lien. The bid-off mechanism merely insures that no interest in the property will be conveyed at a tax sale without the government receiving the arrearage that is the very reason for the sale. Fawncrest appears to believe that potential buyers at tax sales have a statutorily-protected interest in any given property actually being offered. They do not. If the government instead chooses to acquire fee simple ownership, paying market value (presumably less the taxes, penalties and costs owed), nothing in the statute keeps it from doing so. And that is so whether or not the property has been sold at a tax sale and a certificate issued; until the buyer's interest has ripened into entitlement to a tax deed, the District, like the original owner,[3] may redeem the property and thereby extinguish the tax lien. *See* T.C. Williams, Annotation, *Acquisition by State or Other Governmental Body of Title to Land, Otherwise than at Tax Sale, as Affecting Prior Tax Lien on Land, or Validity of Sale for Such Taxes,* 158 A.L.R. 563, 566–67 (1945) (In explaining the effect of governmental acquisition, courts have variously "stated that the property is taken free of the prior tax lien, or is absolved and freed of further liability for the taxes and the lien therefor, or . . . the acquisition by a governmental unit puts an end to the lien on the property, releases the land from the lien, or extinguishes the prior lien or assessment thereon") (footnotes omitted).[4]

■ Fawncrest further argues that even if the government may acquire the property by buying it during the redemption period, it may not do so without complying strictly with the redemption procedures. To do so, it says, the District had to remit money to itself: the Department of Housing and Community Development, which held and managed the purchased property, had to pay the redemption amount to the Department of Finance and Revenue, which collects the taxes. Courts understandably have rejected as "utterly futile" and pointless an intra-governmental transfer of this kind, which is "but taking the money out of one pocket and putting it in the other ." *State v. Locke,* 29 N.M. 148, 219 P. 790, 792 (1923); *see also* D.C.Code § 47–1002 (1997) (Property belonging to the District of Columbia is "exempt from taxation in the District of Columbia."). Fawncrest's remaining argument that the District breached the statute by not mailing Fawncrest a refund check for the amount due as soon as the redemption took place[5] fares no better. Fawncrest eventually received a refund of the amount paid, plus interest to the date of repayment. Any fault on the District's part in not returning the money sooner did not entitle Fawncrest to more than what the statute allowed it to receive. *See McCulloch,* 685 A.2d at 402–03 (District's negligence in acting on presentation of tax sale certificate entitles purchaser

2. Only when a property bid off by the District has not been redeemed within the specified time may "the Mayor . . . enforce the lien of the District . . . by ordering that a deed in fee simple be issued . . . to the District of Columbia . . . ." D.C.Code § 47–847.

3. The District promptly recorded its deed here following purchase from the bank.

4. Fawncrest's reliance on *Massie, supra,* is misplaced, since the District there could assert only the inchoate interest of having bid off the property against the superior interest of later tax sale purchasers entitled to issuance of a deed once the redemption period had expired. *See* 634 A.2d at 1228–29.

5. D.C.Code § 47–1319 provides that "[a]ll moneys paid or deposited . . . for the redemption of property sold for taxes, shall be paid . . . to the person or persons entitled to receive it, on the presentation of the certificate of the [Tax] Collector."

only to refund of purchase money plus interest.).

*Affirmed.*