446 A.2d 1114 (1982)
1776 K STREET ASSOCIATES, et al., Appellants,
v.
DISTRICT OF COLUMBIA, et al., Appellees.
No. 80-1252.
District of Columbia Court of Appeals.
Argued March 31, 1981.
Decided March 25, 1982.
Gilbert Hahn, Jr., Washington, D. C., for appellants.
Robert J. Harlan, Jr., Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, North Little Rock, Ark., Charles L. Reischel, Deputy Corp. Counsel and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellees.
Before KELLY, MACK and FERREN, Associate Judges.
MACK, Associate Judge:
Appellants, owners of commercial real estate, sought a declaratory judgment and a permanent injunction prohibiting the District of Columbia, et al. from collecting real property taxes based on "corrected" notices of assessment sent to appellants by the Department of Finance and Revenue on or about April 10, 1980.
The trial court ruled as a matter of law that the District of Columbia has the authority to send corrected notices of assessment. We affirm.[1]
The facts are not in dispute and may be summarized as follows:
On or about March 1, 1980, the Department of Finance and Revenue (Department) in accordance with D.C.Code 1978 Supp., § 47-645 mailed notices of proposed *1115 assessment for tax year 1981 (July 1, 1980 to June 30, 1981) to all property owners in the District. After that mailing, the Department discovered that approximately 400 commercial property owners received notices which were incorrect because the proper values, handwritten on the Assessment Record Cards by assessors, were incorrectly transcribed onto the notices. Appellants were among the commercial property taxpayers who received these erroneous notices.[2] Of the approximately 400 incorrect transcriptions, nearly 350 proposed a lower value for the properties than had been found by the responsible assessors and the other 50 proposed a higher value. The preliminary assessment roll, published by the Department on or before March 1, 1980, reflected the errors of the incorrect notices.
Upon discovering the errors, the Department sent corrected notices of proposed assessment dated April 10, 1980, to the taxpayers in question. The corrected notices listed the proposed property values actually found by the responsible assessors. They also reminded the taxpayers of the April 15, 1980, deadline for filing appeals with the Board of Equalization and Review (Board).
By letter of May 2, 1980, the Board advised the taxpayers that it had been informed by the Department of the "computer and processing errors" that had necessitated the mailing of corrected notices of assessment. Accordingly, the Board voted to extend the time for filing appeals from the corrected proposed assessments to May 15, 1980. Appellants filed appeals with the Board challenging the legality of the corrected notices but not the assessments reflected therein. The Board took no action on the appeals. Appellants filed suit in the Tax Division of Superior Court.
The trial court granted summary judgment for appellees, concluding that the Department has inherent authority to correct notices of proposed assessments for the kind of errors at issue, noting 1) there is no statutory prohibition against the District sending out corrected notices of proposed assessments after March 1 and 2) the statute (see D.C.Code 1978 Supp., § 47-646(i)) contemplates late mailing of proposed assessments or no mailing at all under certain circumstances.[3] This appeal followed.
As we understand appellants' arguments in this court, in the trial court, and before the Board, they do not contend that the property values reflected in the corrected notices of assessment were wrong. They have not disputed that the errors which led to the corrected notices were of a clerical origin. They argue rather that the Department lacked authority after March 1 to act with regard to assessments[4] even though the action consisted of the mere correction of clerical errors. In our view, such a restrictive interpretation is patently unsupportable as well as antithetical to the purpose and operation of the statute.
In revising the real property tax in the District of Columbia in 1974, Congress sought to achieve several objectives including an "[e]quitable sharing of the financial burden of the government of the District of Columbia" and the "[a]ssurance that shifts in the tax burden on individual taxpayers [would] not be excessive." D.C.Code 1978 Supp., § 47-621(1) and (4).
*1116 Briefly, the procedural framework of this legislation required the Department of Finance and Revenue[5] to compile, on or before March 1 of each year a "`preliminary' assessment roll" covering the land and improvements of all real property in the District of Columbia. D.C.Code 1978 Supp., § 47-644(a). As soon as possible after January 1 but no later than March 1 of each year, the Department was required to notify each taxpayer of the assessment of his real property for the next fiscal year. Id. § 47-645. The taxpayer was given until April 15 to appeal the issue of value to the Board of Equalization and Review. Id. § 47-646(e).
The Board was to assure that all real property is assessed at its estimated market value, and was authorized to "raise or lower the estimated market value of any real property which it finds to be more than five per centum above or below the estimated market value contained in the preliminary assessment roll." Id. § 47-646(f).
An aggrieved taxpayer who did not receive a notice of proposed assessment prior to March 15, was excused from the requirement of initial appeal to the Board and was permitted to go directly to the court. Id. § 47-646(i). See note 3 supra.
On or before June 1, the Board was required to certify the "revised" assessment roll for the forthcoming tax year to the Mayor for further revisions and for approval of such assessment roll not later than June 30. "Except as otherwise provided by law, the approved assessment roll shall constitute the basis of assessment for the forthcoming fiscal year and until another assessment roll is made according to law." Id. § 47-646(g).
It seems clear from this statutory scheme that the time frames were provided to give the taxpayer an opportunity to obtain adequate notice of, and administrative review of, assessments prior to their certification, and that appellants have had this opportunity. It is likewise clear that the statute contemplates that some notices might issue subsequent to March 1. See Schmidt v. District of Columbia, Tax Docket 2628 (January 2, 1979). Appellants argue, however, in a reference to the trial court's holding, that the point is not that the statute does not forbid Department action after March 1 but that it does not authorize it, and that there is no inherent power on the part of an administrative body to correct errors. We answer that the Department was empowered, with the aid of appointed assessors, sworn for the purpose, to impartially assess property in accord with specific legislative and regulatory guidelines. As such it had not only the power, but the duty to ensure that the true values arrived at by the assessors were accurately transmitted. The power to make corrections of clerical errors under the circumstances of this case is necessarily implied from the powers expressly granted. See Stahlman v. FCC, 75 U.S. App.D.C. 176, 180, 126 F.2d 124, 128 (1942).
This is especially true in view of the nature of the errors and the promptness with which the Department acted. Appellants have pointed to no prejudice suffered, either substantively or procedurally, as a result of the Department's action to correct the notices. Moreover, on this record it is clear that the Department was not acting to reassess or to "correct an assessment," but only to accurately report the valid assessments arrived at by the experts. The Board has approved the corrected notices and given appellants opportunity to appeal the value of assessments. Appellants have not challenged the assessments as being excessive, arbitrary, or non-reflective of market value. The trial court properly granted summary judgment for appellees.
Affirmed.
FERREN, Associate Judge, concurring in the judgment:
While I agree with my colleagues that one purpose of the statutory scheme is to protect the taxpayer's right to adequate notice and administrative review, I believe *1117 it also was designed to assure reliability and finality of assessment notices. For this reason, the statute establishes a specific, unalterable timetable for the process. Contrary to my colleagues, therefore, I am convinced that the Department of Revenue and Finance is not empowered to make ex parte revisions after the March 1 deadline, even with the irregular blessings of the Board of Equalization and Review. Neither the statute, D.C.Code 1978 Supp., § 47-646, nor the Board's own Rule 4(a)(4)(i) and (ii) permits it. Only the Board, following proper procedures, can make the revisions at issue here.
Nonetheless, recognizing the Department's error, I note that appellants never have questioned the amounts of the revised assessments or the taxes owed, even though they eventually received adequate notice and an extended opportunity for administrative appeal. I conclude, therefore, that absent a showing of prejudice from the Department's action, there are no "extraordinary circumstances" entitling appellants to equitable relief. District of Columbia v. Keyes, D.C.App., 362 A.2d 729, 737 (1976).

I.
My reasoning, more specifically, is as follows. The governing statute, D.C.Code 1978 Supp., § 47-645, requires the mailing of notices by March 1.[1] The next section of the statute, D.C.Code 1978 Supp., § 47-646(i), ante at 1115 note 3, does not authorize the correction of notices after March 1. Its express purpose, rather, is to protect the taxpayer's right to appeal in case of delayed receipt of notice. To construe the statute as also empowering the Department to mail notices after March 1 undermines the express limitation of § 47-645.
Nor can I accept the proposition that the Department's corrective actions reflect an implied power under its statutory duty to issue assessment notices. Because a specific procedure is established in § 47-646(f) for the revision of assessments by the Board,[2] and Rule 4(a)(4)(i) and (ii) expressly provides that the Department shall petition the Board for changes in assessments,[3] my colleagues' expansive reading of the Department's authority is, I believe, inappropriate. After completion of the preliminary roll and mailing of the notices on March 1, the Department has no further statutory authority in the process; it is precluded from revising assessments for any reason.
My colleagues suggest that the Department was not actually revising assessments merely by reporting the accurate figures. This distinction obscures the valid interests of the taxpayer protected by the statute. It is immaterial to the taxpayer whether the error is typographical, computer-related, or substantive. The taxpayer is interested *1118 in a reliable and final assessment upon which budgets can be based or appeals taken. The clear purpose of the detailed statutory scheme is to prevent such last-minute changes, regardless of the cause. The taxpayer should be given a proper assessment before March 1. If not, the Board itself must authorize any revision pursuant to established procedures, with adequate explanation to the taxpayer and a right to appeal.

II.
Although appellants correctly have noted that the Department failed to comply with the statute and the Board's rules, they have challenged the second (revised) assessment notices without questioning the dollar amounts of the underlying assessments themselves. They argue, rather, that by virtue of the defective procedure there are, by definition, no assessments at all giving rise to taxation; there are no dollar amounts to challenge.
In seeking equitable relief from taxation, which is available only in "extraordinary circumstances," Keyes, supra at 737, appellants must provide more than a theoretically correct argument. They must demonstrate injury from the government's irregular action. They cannot expect to be excused from tax obligations to the District based on assessments which they have proffered no equitable basis for contesting, despite ample opportunity to do so through an extended hearing procedure before the Board itself. In short, appellants have indicated no reason for the trial court  or this court  to believe that if we declare their rights and order the government to start all over again, the result will be any different.
Accordingly, I agree that the trial court should stay its hand. At best, appellants are entitled to anticipate that, in the future, the Department will issue accurate notices and, in case of error, will comply with the required procedures for amendment  at the risk of equitable correction if it fails to do so.
NOTES
[1] While requesting a decision on the merits, "in the public interest" appellees have appropriately noted that suits to enjoin the collection of taxes are prohibited by D.C.Code 1973, § 47-2410, except in exceptional and extraordinary circumstances and that appellants' action was not properly maintainable because the full amount of taxes due for tax year 1981 was not paid prior to the filing of this action as required by D.C.Code 1973, § 47-2403. See District of Columbia v. Green, D.C.App., 310 A.2d 848 (1973).
[2] Appellants brought this action as a class action on behalf of themselves and all similarly situated taxpayers who received "corrected" notices of proposed assessment increasing property values. The trial judge declined to certify the class.
[3] Section 47-646(i) provides:

Any person aggrieved by any assessment, equalization, or valuation made, may, within six months after October 1 of the calendar year in which such assessment, equalization, or valuation is made, appeal from such assessment, equalization, or valuation in the same manner and to the same extent as provided in sections 47-2403 and 47-2404, if such person shall have first made his complaint to the Board respecting such assessment as herein provided, except that in any case where no notice in writing of such increase of valuation was given the taxpayer prior to March 15 of the particular year, no such complaint shall be required for appeal.
[4] Appellants point to the Rules of Practice and Procedure before the Board of Equalization and Review which provide that the Department may petition the Board to correct an erroneous assessment. Rule 4(a)(4)(ii).
[5] The Code provisions speak in terms of the "Commissioner," subsequently replaced by the "Mayor" who delegated functions to the Department.
[1] D.C.Code 1978 Supp., § 47-645 provides in part:

Beginning as soon as possible after January 1, but no later than March 1 of each year, each taxpayer shall be notified of the assessment of his real property for the next fiscal year....
The statute empowers the Mayor to prepare the preliminary assessment roll. The Mayor delegated this authority to the Department of Finance and Revenue. 21 DCR 2445 (March 31, 1975).
[2] D.C.Code 1978 Supp., § 47-646(f) provides:

Pursuant to applicable provisions of law, regulations adopted by the Council, or orders of the Commissioner [Mayor], the Board shall attempt to assure that all real property is assessed at the estimated market value. Based on the record of complaints or of other information available to or solicited by the Board, the Board shall raise or lower the estimated market value of any real property which it finds to be more than 5 per centum above or below the estimated market value contained in the preliminary assessment roll prepared by the Commissioner [Mayor] according to section 47-644 and shall revise the assessment roll accordingly.
[3] Rule 4(a)(1)(4) of the Rules of Practice and Procedure before the Board of Equalization and Review provides:

A petition may also be filed with the Board by the Director of the Department of Finance and Revenue or his duly authorized representative for the following purposes:
(i) To bring to the Board's attention the need for change in assessments of adjoining, similar or related properties which may be affected by the Board's decision on a petition under review, and
(ii) To correct any assessment, valuation or equalization which the Director believes to have been erroneously made.