DISTRICT OF COLUMBIA, Appellant,

v.

UNITED JEWISH APPEAL FEDERATION OF GREATER WASHINGTON, INC. and Leon Gerber, Appellees.

Nos. 93–CV–398, 93–CV–1437 and 95–CV–541.

District of Columbia Court of Appeals.

Argued Jan. 4, 1996.

Decided March 11, 1996.

Edward Schwab, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Danny M. Howell, Washington, DC, with whom Lipman Redman, was on the brief, for appellees.

Before FARRELL and REID, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This case began in 1989 when the District filed suit to quiet title in a piece of real property it had bought years earlier at its own tax sale, which had been necessitated by the non-payment of property taxes. Appellee United Jewish Appeal Federation of Greater Washington, Inc. ("UJAF"), as the owner of a beneficial first deed of trust on the property, counterclaimed pursuant to 42 U.S.C. § 1983 to declare the tax deed void, asserting that it had not received constitutionally valid notice of the tax sale. UJAF also requested attorney's fees and costs pursuant to 42 U.S.C. § 1988, as well as an accounting of the rents the District had collected.

The Superior Court declared the tax deed void. The District launched an interlocutory appeal. This court affirmed, agreeing that the District had failed to provide constitutionally adequate notice of the tax sale to UJAF. *District of Columbia v. Mayhew,* 601 A.2d 37 (D.C.1991).

On remand, the trial court attempted to resolve issues related to rents and attorney's fees. Following a good deal of discovery disagreement, the court fashioned a number of orders that are the subject of these consolidated appeals. First, the court, largely as a discovery sanction, rescinded all of the past due taxes on the property, which had formed the basis for the District's initial action. Second, the court ordered the District to pay UJAF the rents the District had collected, as far as they could be estimated, without a set-off for expenses. Third, at various points, the court ordered the District to pay UJAF's attorney's fees. The District attempted to appeal from these orders.

As to the trial court's discovery ruling regarding back taxes, we find that the trial court exceeded its power in this area, and therefore reverse as much of its orders as so provide. On this issue, we remand so that the trial court can make an additional determination as to whether any amount of these taxes should be set-off against the rents that UJAF has claimed. To the extent the trial court ordered the District to pay UJAF the rents without set-offs for expenses, we affirm, concluding both that the District has procedurally defaulted as to many of its arguments in this area, and that the District's arguments are largely without substantive merit. Finally, as to the attorney's fees question, we reverse the trial court, and remand so that the trial court can make findings as to which portions of the attorney's time was spent vindicating the constitutional violation, and award fees only for that portion of the time.

## I.

The property at issue is located at 6425 14th Street, N.W. In 1979, when Every Tom Dick and Harry Associates (ETDH), the record owner, purchased the property, a deed of trust was established.[1] In late December of that year, the deed of trust was transferred to UJAF. EDTH failed to pay taxes on the property, and after purporting to give proper notice to all concerned, the District held various tax sales. When no one bid on it, the District bought the property and started collecting rents that were apparently generated by a twenty-unit apartment building on the property. The District eventually moved to quiet title and UJAF intervened, asserting that the tax sale was invalid because UJAF was never given notice prior to the sale. The trial court agreed and granted UJAF summary judgment, setting aside the tax sale. The trial court's order returned the property to the status it was prior to the initial tax sale, with the taxes due and owing, ETDH being the owner, and UJAF's trust intact. This court affirmed, holding that the District

had failed to give UJAF constitutionally sufficient notice, and had accordingly violated its due process rights in selling the property. *Mayhew, supra,* 601 A.2d 37.

After our decision, the trial court first tried to decide the remaining substantive issue, whether and to what extent rents were to be disgorged by the District to UJAF.[2] In April 1992, the trial court set a discovery schedule whereby discovery would be closed on June 24, 1992. Because the District did not respond to the initial propoundment of interrogatories which apparently requested rent and tax information (sent on May 21, 1992), UJAF moved to extend the time for discovery to that noted under "Track 3" of the initial discovery order. The court adopted the suggestion, apparently ordering the District to answer certain interrogatories and document production requests by July 31, 1992.

On September 1, 1992, UJAF moved for sanctions against the District on the ground that the District had not fully complied with the discovery order. Specifically, UJAF alleged that the District had failed to provide any information as to taxes due on the property, and had provided information as to rents for only certain months. By way of sanctions, UJAF urged the court: (a) to rule that no real estate taxes were owed with respect to the property; (b) to deem the rental income from the months as to which discovery was inadequate to be the fair market value; (c) to rule that no expenses would be set-off against the rents; and (d) to order the District to pay the attorney's fees incurred by UJAF in bringing the motion. The District responded on September 14, 1992, asserting, among other things, that it had substantially complied with the requests. In an order docketed November 27, 1992, the trial court ordered, "by way of sanction, that no real estate taxes are owed with respect to the property," that no expenses would be deemed incurred, and that rental income for the missing months would be the fair market value.

---

1. For a more detailed summary of the early facts and procedures governing the tax sale, see the court's prior decision in this case, *Mayhew, supra,* 601 A.2d 37.

2. The District did not specifically respond, in its answer to the counterclaim seeking rents, to that question.

On November 2, 1992, UJAF had moved for summary judgment on its counterclaims, urging that rents be paid over to it to the extent of its security interest, that the court declare that no taxes were owed with respect to the property (so that it could foreclose on the property), and that attorney's fees be awarded pursuant to 42 U.S.C. § 1988. The District apparently failed to oppose this motion. In an order docketed on March 5, 1993, the court ordered the District to pay UJAF for rents in the amount of $259,058, plus interest, ordered that an accounting be had before a master as to the rent due for months as to which records were missing, declared that no taxes were due and owing as to the property, and directed that attorney's fees were to be paid to UJAF in an amount to be determined.

Prior to the issuance of this order a colloquy was held, with the court asking why UJAF, instead of the owner of the property, was entitled to the rents. While representatives of the owners asked for a few days to formulate their position, the District did not protest UJAF's request (indeed, the District had not filed a response to the summary judgment motion at all). In any event, the District filed a notice of appeal as to this order on April 5, 1993.

On May 11, 1993, UJAF, noting that the District had not come forward as to either rents or attorney's fees, asked that they be determined by the court, with the rents for the undocumented months set at $123,918 and the fees set at $104,384. On June 4, 1993, the District opposed this motion on the grounds that it was then appealing the order giving rise to the motion and that it had been, as an attached letter indicated, attempting to resolve the fee issue. On August 2, 1993, the court ordered that the rents and fees be paid in the amounts specified in UJAF's motion. The District did not notice an appeal from this order until November 7, 1993.

On June 9, 1993, the District moved for relief from the judgments of November 27th and March 5th, pursuant to Super.Ct.Civ.R. 60(b)(4), asserting that the orders setting aside the taxes violated the Anti–Injunction Act (D.C.Code § 47–3307), which was a juris-dictional bar to the court's action. On July 12, 1993, UJAF opposed this motion. The court denied the motion, finding that it was without jurisdiction since the District had appealed the judgment.

On September 14, 1993, the District again moved, pursuant to Rule 60(b), to vacate the November and March orders. It argued that the sanction award was inappropriate and that the relief for the constitutional injury was too broad. The court denied the motion in an order docketed October 7, 1993, finding that it was actually a Rule 59(e) motion and was time-barred. On November 7, 1993, the District filed a notice of appeal, noting that it wished to appeal both the August and October orders.

On June 18, 1993, UJAF had moved for an award of attorney's fees for the period between the March 3rd order and June 9th. On July 9, 1993, the District opposed this motion. In an order docketed August 2, 1993, the court awarded interim attorney's fees for this period. The District did not directly appeal this order.

Upon an unopposed motion for attorney's fees for the period between June 10, 1993, and December 31, 1993, the trial court directed the payment of $38,906 plus interest in an order filed October 17, 1994. In a motion for reconsideration filed October 28, 1994, the District moved for reconsideration of this order on the ground that inadvertence had led it to not oppose the motion. In an order docketed March 31, 1995, this motion for reconsideration was denied. On April 26, 1995, the District filed a notice of appeal of the order denying reconsideration.

## II.

### The Trial Court's Ruling Regarding Taxes

As a sanction for the District's failure to adequately respond to discovery requests and orders, in November 1992, the trial court ruled there was no obligation to pay the taxes then due and owing on the property. The trial court also purported to set aside these taxes when ruling on UJAF's motion for summary judgment in February and March 1993. We conclude that each of these

orders, if reviewed as a discovery sanction, was an abuse of discretion and therefore error. Accordingly, we reverse this order.

■ District of Columbia Code § 47–3307 (1990 Repl.), the so-called Anti–Injunction Act, provides, "No suit shall be filed to enjoin the assessment or collection by the District of Columbia ... of any tax." As no one disputes, this precludes a court from suspending the collection of taxes by the District except in extraordinary circumstances not applicable here. *1776 K Street Assocs. v. District of Columbia*, 446 A.2d 1114, 1114 n. 1 (D.C.1982). The statutory bar precludes declaratory as well as injunctive relief. *Barry v. American Tel. & Tel. Co.*, 563 A.2d 1069, 1073 (D.C.1989); *see also Shaw v. United States*, 331 F.2d 493 (9th Cir.1964) (penalties for failure to pay tax cannot be enjoined given Anti–Injunction Act).[3] The trial court's order to the effect that none of the past due taxes on the property could be collected, even if intended as a discovery sanction, clearly ran afoul of the Act.

The District did not make the anti-injunction law arguments when the two motions raising the question were before the trial court. Nonetheless, it asserts that since the trial court was without jurisdiction to enjoin the collection of taxes, the questions can be reviewed. The District's vehicle for this argument was its motion under Super.Ct.Civ.R. 60(b)(4), which it invoked when it moved to have the initial orders vacated. It is the denial of that motion that we now consider.

■ Pursuant to Rule 60(b)(4), the losing party can challenge an order on the basis that the court did not have jurisdiction over the subject matter. *See Kammerman v. Kammerman*, 543 A.2d 794, 799 (D.C.1988). Here, the District claims that the court went beyond its jurisdiction in addressing the taxes.

Under D.C.Code §§ 47–3303, –3307, a suit seeking the voidance or adjustment of taxes paid to the District will lie only after certain paths are taken (i.e., the taxes are paid and then challenged). *Barry, supra*, 563 A.2d at 1073. The statutory prerequisites were not met here, as no one disputes. Accordingly, the trial court was without jurisdiction to enjoin the taxes. *See National Trust for Historic Preservation v. District of Columbia*, 498 A.2d 574, 575–76 (D.C.1985).

■ UJAF argues that this analysis is inapplicable here, asserting that the subject matter of the suit was § 1983 and the voiding of the tax deed, and the setting aside of the taxes was only subsidiary of that. Since the focus of the suit was within the court's jurisdiction, goes this argument, the subsidiary acts were impervious to jurisdictional challenge. We first note that the test of whether an action runs afoul of the Anti–Injunction Act is not whether the purpose of the suit is solely to question the liability of the party requesting the relief. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 739–42, 94 S.Ct. 2038, 2048–49, 40 L.Ed.2d 496 (1974). Rather, the question is whether, because of the action requested or taken, "any assessment or collection of [ ] taxes will be prohibited." *Crenshaw County Private Sch. Found. v. Connally*, 474 F.2d 1185, 1188 (5th Cir.1973), *cert. denied*, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974). The blanket cancellation of the taxes here prohibited the "assessment or collection" of taxes due upon the property.

■ Moreover, UJAF's approach—though it has a certain resonance—would improperly empower a court to do anything so long as it has jurisdiction over the case, regardless of directly binding prohibitions. UJAF's argument also misappreciates the nature of a jurisdictional challenge. Whether or not jurisdiction is in all respects proper is not necessarily implicated by the mere filing of suit by itself, since a suit generally belongs, by definition, in a court. Rather, it is the questions presented by the suit (including counterclaims) and the relief requested and granted that necessarily force the question of jurisdiction. *See United States v. Forma*, 42 F.3d 759 (2d Cir.1994). Here, for example, the jurisdictional question is not whether the § 1983 action belonged in Superior Court,

---

**3.** The statute restricting the federal courts is very similar to that before us. *Compare* 42 U.S.C. § 7421(1) *with* D.C.Code § 47–3307. Accordingly, we find the analysis of those courts persuasive when construing our own law. *See Barry, supra*, 563 A.2d at 1073–76.

but whether the Superior Court had the power to order the relief that it did (i.e., the cancellation of taxes).

We caution that the word "tax" is not a talisman that deprives the trial court of jurisdiction to remedy wrongs with which tax questions are intertwined. Therefore, we remand the case to the trial court to determine whether the taxes should be set-off against the rents, understanding that the trial court retains broad discretion to fashion an appropriate discovery remedy short of "cancellation" of the taxes.[4]

## III.

### Rents and Set–Offs

The District also appears to challenge the trial court's orders directing it to pay to UJAF the rents the District collected on the property without set-off for expenses. The District now claims both that UJAF was not entitled to rents because it was not the owner of the property and that the trial court erred in not permitting a set-off against the rents for the expenses the District incurred in running the property. Since the District has procedurally defaulted on these questions, and is largely incorrect on the merits, we affirm the trial court's orders.

 As to the rents generally, we note that the possessor of tax title must disgorge rents collected under that title if it is subsequently rendered void. *Robinson v. Mattox*, 500 A.2d 1001, 1003 (D.C.1985). As we held the last time this matter made its way here, the District's title was void. *Mayhew, supra*, 601 A.2d 37. Accordingly, the District was required to disgorge the rents.

 Whether UJAF was a proper party to receive the rents is not properly before us. This matter came up in the trial court but, as noted above, neither the District nor the owner of the property contested the payment of the rents to UJAF before the trial court decided the issue. Accordingly, the District failed to preserve for review its argument concerning which entity was to receive the rents. *See Ford v. District of Columbia*, 102 A.2d 838, 839 (D.C.1954), *aff'd*, 95 U.S.App. D.C. 87, 219 F.2d 769, *cert. denied*, 349 U.S. 964, 75 S.Ct. 897, 99 L.Ed. 1286 (1955). Whatever the relative merits of the rule requiring the timely raising of claims in other situations, we note that the rule's application is particularly warranted here because much of the District's appellate argument concerns the nature of the relationship of the parties, as to which a record complete with factual findings (or at least averments) is indispensable to our consideration of the matter.

Nor did the District ever properly appeal from the final order directing it to pay the rents to UJAF, which was entered on August 2, 1993. Thus, the only claim arguably before us as to the rents was the District's appeal of the denial of its Rule 60(b) motion. However, any arguments it made there at most asserted legal error on the part of the trial court when it originally decided this issue, which is not a proper basis for a motion pursuant to Rule 60(b). *Fleming v. District of Columbia*, 633 A.2d 846, 849 (D.C. 1993).

 Nor was the trial court's denial of a set-off for expenses erroneous. The party claiming a set-off bears the burden of establishing it. *Robinson, supra*, 500 A.2d at 1004–05. Here, the District had the burden of proving its entitlement to set-offs, but did not assert as much. Moreover, we are satisfied that the District failed to comply with the trial court's discovery orders, which itself provided a basis for denying set-off. Super.Ct.Civ.R. 37(b)(2). Further, a claim for set-off is a compulsory counterclaim, Super.Ct.Civ.R. 13(a); *District of Columbia v. Morris*, 367 A.2d 571, 573 (D.C.1976), which was barred since it was not made in response to UJAF's answer and counterclaim. *Bronson v. Borst*, 404 A.2d 960 (D.C.1979). Nor did the District ever properly appeal from the final order directing the payment of rents without a set-off for expenses, and it only made legal error arguments in its Rule 60(b) motion, which is not a proper basis for a

---

**4.** Although UJAF now characterizes the trial court's various orders as a mere disallowance of a set-off for taxes against rents, we decline to adopt such a construction of the orders at this juncture, given what the orders currently provide.

motion pursuant to Rule 60(b). *Fleming, supra,* 633 A.2d at 849.

## IV.

### Attorney's Fees and Costs

The District asserts that the various awards of attorney's fees and costs should be reversed. We note before addressing claims for each date that the trial court did not, on the record now before us, make findings as to the various fee and cost awards. On remand, such findings should be made to the extent we describe them below. Because there are different issues relating to each of the three separate fee awards, we consider them individually, after reviewing the general precepts that guide our decision.

█ In 42 U.S.C. § 1988, it is provided that, "In any action or proceeding to enforce a provision of section ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The purpose of the attorney's fee provision, which is a direct departure from the "American Rule," under which each party to a lawsuit bears its own fees, *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983), is to assist parties in vindicating their constitutional rights. *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (discussing congressional intent behind § 1988). With this purpose in mind, we are called upon to determine whether UJAF was entitled to an award of fees for all of the work done on its behalf from the time it entered this case until the end of 1983.

█ We first analyze the order docketed March 5, 1993, which covered the work done by UJAF's attorneys, including associated costs, from the inception of the action through the end of February 1983. During the first stage of this action, up through its successful defense of the trial court's order in *Mayhew, supra,* 601 A.2d 37, UJAF was seeking to vindicate its constitutional right to notice. However, after *Mayhew,* UJAF's constitutional right was fully vindicated and the case entered an entirely non-constitutional phase. And, once the case ceased being

"any action or proceeding to enforce" constitutional rights under § 1983 and § 1988, the attorney's fee provision in the latter ceased being actionable. Therefore, we reverse the order of the trial court inasmuch as it awarded fees for work completed after our decision in *Mayhew.*

As to the second order of August 2, 1993, awarding attorney's fees for the period between March 5, 1993 and June 9, 1993, we reverse only so that the trial court can clarify its reasons for granting fees for this time period. Thus, if the fees were solely to cover the cost of trying to get the fees, the court should say as much. Similarly, if the award was a sanction under Super.Ct.Civ.R. 37 or some other provision, the court should so rule. Without the necessary clarification, this court cannot review that order.

As to the third fee award, covering from June 10, 1993 to December 31, 1993, we agree with the District that the trial court abused its discretion in awarding attorney's fees as to these dates. As noted above, at this point UJAF's constitutional rights had been totally vindicated; all action under § 1983 had ceased. Accordingly, an attorney's fee award was not warranted on the basis of § 1988. Therefore, we reverse this order of the trial court.

## V.

### Conclusion

To summarize, the trial court's order setting aside the back taxes is reversed, and the matter remanded for further determinations not inconsistent with this decision; the court's order directing payment, to UJAF, of rents without set-offs for expenses is affirmed; and the court's orders awarding attorney's fees are reversed in part, with the court directed to state its basis for awarding fees for the period between March 5, 1993 and June 9, 1993, and to resolve the matter in accordance with those findings.

*So ordered.*

FARRELL, Associate Judge, concurring.

I agree with my colleagues' rejection of the District's argument in behalf of a set-off for

expenses and with their resolution of the issue of attorney's fees. I further agree that the trial court's cancellation of the real estate taxes due on the property was improper, but I would rest that determination explicitly on an abuse of discretion, rather than on a conclusion that the trial court exceeded its "jurisdiction" in nullifying the back taxes as a sanction.

The trial court's November 23, 1992 order is clear: "by way of sanction, ... no real estate taxes are [to be considered] owed with respect to the property that is the subject of this action." The trial court nullified the tax arrearage attached to the property because of the District's failure to make timely discovery under Super.Ct.Civ.R. 37 of the amount of taxes then due. In effect the court treated "the matter[ ] regarding which the [discovery] order was made"—namely, whether taxes were due on the property and, if so, in what amount—as "established for the purposes of the action...." Rule 37(b)(2)(A).[1]

The choice of sanction for a discovery violation lies within the trial court's sound discretion, and this court is reluctant to second-guess that decision. But in this case the judge's cancellation of the tax liability was greatly disproportionate to the government's foot-dragging in discovery, and ignored lesser remedies available such as the threat of contempt. *See* Rule 37(b)(2)(D). As the Supreme Court has stated, "[T]axes are the life blood of government, and their prompt and certain availability an imperious need." *Bull*

*v. United States,* 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935). The anti-injunction statute, D.C.Code § 47–3307 (1990 repl.), reflects this principle. It is unnecessary for us to decide, however, whether that statute deprived the trial court of "jurisdiction" to deem the non-existence of a tax liability conceded as a discovery sanction.[2] At the least, the statute makes clear that any such nullification of a tax is an extreme remedy available only as a last resort. The trial judge here, for example, could have directed the District to supply the missing tax information by a date certain under pain of contempt. That sanction would have been far more commensurate with its laggardness in discovery than cancelling a decade's worth of real estate taxes.

My colleagues are thus correct that the judge retains discretion on remand "to fashion an appropriate discovery remedy *short of 'cancellation' of the taxes." Ante* at 1080 (emphasis added). The latter remedy is not open to him, at least so long as others are available.

---

1. Having cancelled the real estate taxes due as a discovery sanction, the judge then logically went on to grant summary judgment to appellees on that point. The District noted a timely appeal from that judgment, and thus the issue is properly before us of whether the judge abused his discretion in his choice of sanction.

2. D.C.Code § 47–3307 provides that "[n]o suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax." The proceedings in this case are difficult to describe as such a "suit." The *District* sued to quiet title on the subject property; appellees counterclaimed to have the tax deed declared void, and were successful. On remand they sought to learn in discovery what taxes were due on the property, if any, and the sanction arose from the District's noncompliance with that request. My colleagues, in holding that § 47–3307 denied the trial court power altogether—jurisdiction—to treat the absence of a tax liability as conceded, cite *Crenshaw County Private Sch. Found. v. Connally,* 474 F.2d 1185 (5th Cir.1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974). But that case involved a suit to enjoin the IRS from withdrawing the plaintiff's tax-exempt status. The proceedings were thus "directly involved with the assessment and collection of taxes from [plaintiff] and those making contributions to it"; if the injunction were issued, "any assessment or collection of ... increased taxes [would] be prohibited." *Id.* at 1188. Whether treating a party's assertion that no taxes are due as conceded upon violation of discovery is tantamount to a suit to enjoin the assessment or collection of taxes is by no means obvious, nor need we decide the issue here.