**REAL ESTATE ESCROW, INC., Appellant,**

v.

**Lee E. FITZGERALD, Appellee.**

**No. 00–CV–1292.**

District of Columbia Court of Appeals.

Argued Dec. 4, 2003.
Decided April 1, 2004.

---

John K. Reiff, Beltsville, MD, for appellant.

Before STEADMAN, FARRELL and GLICKMAN, Associate Judges.

STEADMAN, Associate Judge:

This appeal involves a dispute between an owner of real property who prevailed in a suit to redeem the premises after a tax sale and the purchaser (technically, the successor in interest to the original purchaser) at the tax sale who received a tax deed. The disputed question is over the tax purchaser's liability for imputed rental value in circumstances where the tax purchaser affirmatively took steps to keep the property vacant.

In the case before us, prior to the determination that the tax deed was invalid but while aware that the owner was asserting rights in the property, the tax purchaser evicted a tenant on the premises and left the premises vacant. The tax purchaser rejected a proposal by the owner that the premises be rented and the rent proceeds placed into escrow pending the determination of the validity of the tax deed.

In its order finding the tax deed to have been invalid, the trial court ruled that the owner was entitled to recover from the tax purchaser the lost rental value of the premises for the period following the eviction. On appeal, the tax purchaser acknowledges the invalidity of the tax sale but challenges the rental value award. We affirm.

## I.

■ "The trial court's factual findings are binding upon this court unless they are clearly erroneous" and evidence is viewed in the light most favorable to the prevailing party. *Drevenak v. Abendschein,* 773 A.2d 396, 415–16 (D.C.2001). In 1983, appellee, Lee Fitzgerald, purchased a condominium, known as Apartment 213, at One Scott Circle, Washington D.C. (the "subject property"), along with three other condominiums in that building. Mr. Fitzgerald paid all real estate taxes for the three other units but did not receive the real estate tax bills for and did not pay the necessary taxes on the subject property.

Following a tax sale and Mr. Fitzgerald's failure to redeem the property,[1] on

---

1. On July 7, 1995, a notice of the pending request for a special tax deed and a 30–day notice of redemption was sent to Mr. Fitzgerald's previous address and was returned to the District of Columbia's Department of Fi-

December 13, 1995, a tax deed was issued by the District of Columbia to David Levin for the subject property for $7,350.42. Appellant, Real Estate Escrow, Inc. ("REE") purchased the property from the estate of David Levin on December 11, 1996.

In May 1997, REE filed a complaint to quiet title to the subject property.[2] A final order divesting Mr. Fitzgerald of his interest in the property was entered on October 31, 1997. That order was subsequently vacated and service of process was quashed on March 7, 2000.

Meanwhile, Mr. Fitzgerald, through his management company, leased the subject property to Kris Menga for one year beginning October 1, 1997 for $675.00 per month. On March 18, 1998, REE filed a complaint for possession against Ms. Menga. Mr. Fitzgerald did not intervene in the case but appeared with his attorney to inform the court that it was his property that was before the court. Ms. Menga did not appear at the April 8, 1998 hearing, and the court entered judgment for possession to REE by default. The subject property remained vacant after Ms. Menga's departure in April of 1998. Mr. Fitzgerald attempted to negotiate an arrangement with REE to permit Ms. Menga to remain on the premises with the rent to be escrowed pending the outcome of the title dispute or to rent the premises to another tenant on the same basis. However, all such proposals were rejected by REE.[3]

On May 1, 1998, Mr. Fitzgerald filed suit against REE to recover the subject property. After a court trial, judgment was docketed on August 30, 2000. Finding that Mr. Fitzgerald had not been given proper notice of his right to redeem, the court restored the title of the subject property in Mr. Fitzgerald "*nunc pro tunc* to December 13, 1995," the date of the tax deed. The trial court also credited Mr. Fitzgerald's testimony that REE refused to let Ms. Menga stay in the apartment or to rent the apartment to another tenant and escrow the rent received pending the outcome of the title dispute. In regard to Mr. Fitzgerald's claim for damages for lost rents, the court held that "[s]ince the possession in this case was wrongful, the tax purchaser had the opportunity to collect rents but refused to take advantage of it, and the tax purchaser acted affirmatively to evict a rent paying tenant ... the tax purchaser should be liable for the lost rental income." The trial court awarded Mr. Fitzgerald a monetary judgment of $18,900.00 in lost rental income [4] set off by the $7,350.42 paid by David Levin at the tax sale plus 6% interest from that date and by $3,049.20 paid by REE in real estate taxes plus 6% interest from the date of each payment.[5]

On appeal, REE does not challenge the restoration of title in Mr. Fitzgerald but contends that the award of damages was in error because (i) REE did not have actual

---

nance and Revenue marked as "not forwardable."

2. Apparently on the belief that Mr. Fitzgerald was deceased, service was attempted by publication.

3. A representative of REE testified that he had no recollection of any such discussions but that he was not in the rental business nor interested in securing a new tenant.

4. The calculation was as follows: $675 per month from May 1, 1998, through December

31, 1998, being the rent provided in the lease to Ms. Menga; $750 per month from January 1, 1999, through June 30, 2000. A real estate expert testified that as of January 1, 1999, the property could have rented for $750.00 per month.

5. Mr. Fitzgerald had paid all condominium fees for the subject property, which were $259.00 a month in May of 1998 and were $267.00 per month in March of 2000.

or constructive possession of the property; (ii) any possession was not wrongful in light of the tax deed and quiet title judgment; (iii) REE was not unjustly enriched; and (iv) REE did not actually eject Mr. Fitzgerald's tenant.

## II.

While our jurisprudence holds that a tax purchaser of a subsequently redeemed property is liable to the true owner for any rent *received* during its possession of the subject property, *Robinson v. Mattox*, 500 A.2d 1001, 1003–04 (D.C. 1985),[6] we have never addressed whether a tax purchaser also must account for the rental *value* of the subject property although the tax purchaser never actually collected any rent on the property. The broad question whether a tax purchaser who simply does nothing with respect to the subject property, making no use of it whatsoever, is liable to a redeeming true owner for the imputed rental value of a property is not before us.[7] Rather, we are here called on simply to determine the far more limited question whether the redeeming owner of a tax sale property is entitled to the rental value of such property prior to redemption but subsequent to the tax purchaser's eviction of a tenant and refusal to re-let the premises and escrow the rent pending the outcome of the dispute regarding the property's ownership.[8]

In this case, REE, the tax purchaser, brought an action for possession of the subject property against the true owner's tenant, who vacated the property shortly thereafter.[9] Notwithstanding Mr. Fitzgerald's offers, REE refused to allow Ms. Menga or another tenant to occupy the subject property and escrow the rent collected pending the outcome of the title dispute. Mr. Fitzgerald's offers to escrow Ms. Menga's or another tenant's rent and his initiation of this action against REE on May 1, 1998, at the latest, alerted REE that Mr. Fitzgerald might have a claim to the subject property and therefore also might have been entitled to lease such property. At least as of that point, REE acted at its peril in asserting rights as if it were the true owner. *See Associated Estates, supra* note 8, 779 A.2d at 945–46. "From an equitable standpoint, it makes

6. This is at least true in providing the true owner an offset for rent received against the amount owed to the tax purchaser for taxes paid, as was the case in *Robinson*. Whether a tax purchaser who has taken steps to put the property to active use should be affirmatively liable to a land owner in default of taxes is arguably a less obvious proposition. *But cf. District of Columbia v. United Jewish Appeal Fed'n of Greater Washington, Inc.*, 672 A.2d 1075, 1080 (D.C.1996).

7. REE's argument that it was never in actual or constructive possession of the subject property might have some weight under such a state of affairs but is totally belied by the actual facts here. The imposition of rental value damages in this case began not at REE's acquisition of title but rather at the time of its action to eject Mr. Fitzgerald's tenant and its refusal to escrow rent, surely assertions of actual control over the property.

8. We are not faced here with any question of a reduction of the rental value or rents received by a tax purchaser's corresponding expenses; i.e., liability only for net rentals. No such offsets are claimed by REE. *See United Jewish Appeal Fed'n, supra* note 6, 672 A.2d at 1080; *Robinson, supra*, 500 A.2d at 1004–05. *Cf. Associated Estates, LLC v. Caldwell*, 779 A.2d 939, 946–47 (D.C.2001).

9. REE's argument that it was not responsible for the departure of Ms. Menga is meritless. To the contrary, construing the facts in the light most favorable to Mr. Fitzgerald as the prevailing party, Ms. Menga's departure from the property resulted from REE's action for possession as indicated by her affidavit requesting a stay: "The landlord lost his property in tax sale. The new owner will not honor my lease...I am trying to buy time to look for a new place."

sense *in this case* to require the tax title owner to account for [the] rental[ ] [value]" of the property to the true owner, because potential rent was lost as a direct result of the tax purchaser's failure to cooperate with the potential true owner in renting the property and escrowing the rent *pendente lite. Robinson, supra,* 500 A.2d at 1003–04 (emphasis added).

REE contends, however, that its possession of the subject property was not wrongful during the time that the court order quieting title was in effect, and REE therefore should not be liable for lost rental value during that time. However, REE does not contest either the vacation of the quiet title judgment or the invalidation of the tax deed *ab initio* and the restoration of title in Mr. Fitzgerald *nunc pro tunc* to December 13, 1995. Respondent puts too much faith in the effect of a quiet title action that is subsequently found to be flawed. Such a decree cannot confirm absolute ownership for all purposes where it is vulnerable to successful attack. *Cf. McLaughlin v. Fidelity Sec. Life Ins.,* 667 A.2d 105, 107 (D.C.1995) ("A default judgment entered in the absence of effective service of process is void").[10] However the situation might have been prior to the active assertion of his rights by Mr. Fitzgerald, by May 1, 1998, REE was on clear notice that its title was under challenge and operated at its peril in refusing to cooperate with producing some return from the disputed property. *Cf. Potomac Bldg. Corp. v. Karkenny,* 364 A.2d 809, 812 (D.C.1976) (noting that "the purchaser at this type of sale acts at his peril"), *cert. denied,* 431 U.S. 921, 97 S.Ct. 2192, 53 L.Ed.2d 234 (1977). REE can find no reprieve in any status as a good faith

possessor where it was on notice that ownership of the property was disputed and such ownership was ultimately determined to be adverse to REE's claim.

The award to Mr. Fitzgerald of lost rental value to be setoff by the tax sale purchase price plus interest and tax payments made by REE plus interest as indicated by the trial court is therefore

*Affirmed.*

10. The record before us does not demonstrate with perfect clarity the ground upon which the quiet title action was vacated. However, from the fact that as part of that action the trial court quashed the service of process, it may be inferred that the service by publication was deemed insufficient.